**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TARAS LYSSENKO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07 C 6678** |
| | ) | |
| **INTERNATIONAL TITANIUM** | ) | **Judge Robert W. Gettleman** |
| **POWDER, LLC and STANLEY** | ) | |
| **BORYS,** | ) | **Magistrate Judge Martin C.** |
| | ) | **Ashman** |
| **Defendants.** | ) | |

**DEFENDANT INTERNATIONAL TITANIUM POWDER, L.L.C.'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant International Titanium Powder, L.L.C. ("ITP"),[1] through its attorneys, submits

the following memorandum of law in support of its Motion to Dismiss Counts II, III, IV, and VI

of Plaintiff's Complaint.[2]

<u>**INTRODUCTION**</u>

Plaintiff Taras Lyssenko ("Lyssenko") asserts a number of claims against his former

employer, ITP, as well as against ITP's Chairman and CEO, Stanley S. Borys.  Lyssenko's

allegations essentially arise out of an alleged oral contract for employment and his discharge

from ITP.  An analysis of Plaintiff's allegations, however, reveals an overreaching attempt to

expand a simple breach of contract action to include inapplicable claims of unjust enrichment,

---

[1] Defendant Stanley Borys is filing a contemporaneous motion to dismiss Counts V and VII of Plaintiff's Complaint.  Counts V and VII against Defendant Borys are identical to Counts IV and VI against ITP, and therefore Defendant Borys incorporates by reference the arguments related to Counts IV and VI herein.

[2] Plaintiff's Complaint is referenced herein as "Compl." and is attached as Exhibit 1.

retaliatory discharge, defamation *per se*, and unfair trade practices under the Uniform Deceptive Trade Practices Act ("UDTPA").

In these "add-on" claims, Plaintiff alleges that: (1) ITP was unjustly enriched by terminating its contract with Plaintiff in order to retain the benefits of his work without providing him full recompense (Ex.1, ¶54); (2) ITP wrongfully discharged Plaintiff due to his inquiries concerning ITP's failure to use a public bidding process in awarding a contract (Id., ¶67); and (3) a statement by ITP's CEO that Lyssenko "burned bridges" within the government constitutes both defamation and a violation of the Uniform Deceptive Trade Practices Act.

These allegations fail to state a claim and should be dismissed.  For example, Plaintiff's own unjust enrichment allegations preclude that claim, as Plaintiff alleges the existence of an express contract and he acknowledges that he has already been compensated for the services he claims to have performed for ITP.  Plaintiff's allegations of retaliatory discharge cite no applicable public policy nor do they state how Plaintiff had reason to believe that any of Defendant's actions violated a public policy.  Plaintiff's "burned bridges" allegation is not defamation *per se* because it does not have a precise and readily understood meaning and because it does not state a verifiable fact.  Similarly, that statement cannot support a UDTPA claim because there is no alleged misstatement of fact and no indication of future wrongdoing. Moreover, the UDTPA does not proscribe statements arising out of an employment context.

These causes of action, which are found in Counts II, III, IV, and VI of Lyssenko's Complaint, should be dismissed pursuant to Rule 12(b)(6), as those claims fail to state a claim upon which relief can be granted.

## BACKGROUND

ITP has developed, and is in the process of commercializing, a process by which titanium and titanium alloys can be produced in a cost-effective manner.[3]  For several years, Lyssenko served as ITP's Director of Government Relations and Business Development.  In that role, Lyssenko's assigned duties were to contact governmental officials and agencies and seek funding for ITP's continued efforts to produce low-cost titanium for military and other applications. Lyssenko's duties also included market development with potential customers to expand ITP's commercial sales.

However, due to increased business requirements and Lyssenko's job performance, among other things, ITP terminated Lyssenko's employment in August of 2007 and retained the services of a Washington D.C. firm specializing in governmental relations.  On November 28, 2007, Lyssenko filed this cause of action.

## ARGUMENT

Although the crux of Lyssenko's claim is breach of contract, Lyssenko has also pleaded wrongful termination, unjust enrichment, defamation *per se*, and a violation of the Uniform Deceptive Trade Practices Act.  Those claims, which are found in counts II, III, IV, and VI of Lyssenko's Complaint, should be dismissed pursuant to Rule 12(b)(6) because they fail to state a claim.

### I.    Legal Standards

While it is true that on a motion to dismiss, all factual allegations in the plaintiff's complaint are accepted as true, *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000),

---

[3] For purposes of this Motion, ITP assumes that the facts as pleaded in the Complaint are true.  Defendant, however, reserves the right to dispute those facts in later proceedings.

a complaint should still be dismissed if its factual allegations do not raise the plaintiff's right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007); *Strategic Reimbursement, Inc. v. HCA, Inc.*, No. 06 C 6501, 2007 WL 2274709, *2 (N.D. Ill. Aug. 2, 2007) (Gettleman, J.).  The plaintiff must present more than labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Here, Plaintiff fails to raise his entitlement to relief under the claims discussed above beyond mere speculation.  As a result, those claims should be dismissed.

## II.    Count II Fails to State a Claim for Unjust Enrichment.

Plaintiff alleges in Count II of his Complaint that ITP has been unjustly enriched by his efforts on its behalf.  Plaintiff's claim must be dismissed because (1) he has alleged that an express contract controls his relationship with ITP, and (2) to the extent that Plaintiff has provided services to ITP, he has already admittedly been compensated for those services.

Unjust enrichment, or quantum merit, is a quasi-contractual theory that compensates a plaintiff where the defendant has received services without giving compensation in return. *Hayes Mech., Inc. v. First Indus., LP*, 812 N.E.2d 419, 426 (Ill. Ct. App. 2004).  However, such a quasi-contractual claim cannot stand where an express contract controls the relationship between the parties.  *See, e.g., Conway Corp. v. Alpha Distrib., Ltd.*, 993 F.3d 1549 (7th Cir. 1993); *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007) (Moran, J.); *Slamecka v. Empire Kosher Poultry, Inc.*, 290 F. Supp. 2d 934, 938 (N.D. Ill. 2003 (Gettleman, J.).

Plaintiff has alleged just such an express contract regarding the terms of his employment by ITP.  For example, Plaintiff alleges that he "entered into an agreement with ITP, pursuant to which Lyssenko was to receive payment in amount equal to five percent of all government funds

obtained for ITP through Lyssenko's government relations and marketing efforts." (Ex. 1, ¶1.) Plaintiff references this contract directly in his unjust enrichment count (Ex. 1, Count II - ¶54) and in several of the paragraphs of the Complaint which Plaintiff incorporates by reference into Count II (Ex. 1, ¶¶1, 12, 17, 21, 22, 31).

Given these allegations, Count II – with its quasi-contractual nature – must fail. *See, e.g., Bucciarelli-Tieger*, 488 F. Supp. 2d at 713 (unjust enrichment claim dismissed where claim itself included allegations of a specific contract controlling between the parties).

Moreover, even absent the allegation of an express contract, Plaintiff's claim for unjust enrichment still fails. A necessary element of an unjust enrichment claim is that the defendant has received services from the plaintiff *without compensation for those services. See, e.g. Hayes Mech.*, 812 N.E.2d at 426. Here, Plaintiff cannot establish that he did not receive compensation for his services on behalf of ITP. In fact, in Paragraphs 22 and 46 of his Complaint, Plaintiff admits that ITP paid him a monthly salary, along with health insurance and other benefits, in compensation for his services. Plaintiff's only possible claim for entitlement to additional monies for his services on behalf of ITP is the express contract alleged by Plaintiff – the existence of which defeats a quasi-contractual claim, as stated above.

Based on the foregoing, Plaintiff's unjust enrichment claim should be dismissed for two separate and sufficient reasons: (1) his allegation of an express contract precludes a claim of unjust enrichment, and (2) Plaintiff's pleading demonstrates that he cannot allege a necessary element of such a claim – the absence of compensation for the services alleged.

## III.    Count III of the Complaint Fails to State a Claim for Retaliatory Discharge.

Count III of the Complaint purports to state a claim against ITP for retaliatory discharge. Plaintiff's vague allegations do not provide this Court with any basis to find a clear mandate of

public policy violated by Plaintiff's termination that would support an exception to Illinois' rule of at-will employment.

In Illinois, employers may generally discharge at-will employees for "any reason, good cause or not, or no cause at all." *Miller v. Ford Motor Co.*, 152 F. Supp. 2d 1046, 1048 (N.D. Ill. 2001) (citing *Crenshaw v. DeVry, Inc.*, 526 N.E.2d 474, 476 (Ill. 1988)). Illinois courts have recognized a "limited and narrow" exception to this general rule, in the form of the tort of retaliatory discharge.[4]  *Id.*; *Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1356 (Ill. 1985); *McGrath v. CCC Info. Servs., Inc.*, 731 N.E.2d 384, 390 (Ill. Ct. App. 2000) (collecting cases stating that the Illinois "supreme court has repeatedly and consistently emphasized a goal of restricting the tort of retaliatory discharge"). To state a claim for retaliatory discharge, a plaintiff must allege that (1) he has been discharged; (2) the discharge was in retaliation for plaintiff's activities; and (3) the discharge violated a clearly mandated public policy. *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 813 (7th Cir. 2003). In his attempt to plead a claim for retaliatory discharge, Plaintiff fails to allege a "clearly mandated public policy" that was violated by the termination of his employment, and thus his claim must be dismissed. *See Fowler v. Great Amer. Ins. Cos.*, 653 F. Supp. 692, 693 (N.D. Ill. 1987).

Public policy is "to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Barr*, 478 N.E.2d at 1357. Merely alleging that a statutory or

---

[4] ITP notes that the availability of the common law tort of retaliatory discharge is an unsettled issue in Illinois. Several federal courts have ruled that the tort of retaliatory discharge (which Plaintiff seeks to apply) has been pre-empted by the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*. *See, e.g., Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d 1051 (N.D. Ill. 2007). While an Illinois appellate court recently ruled that there is no pre-emption, *Callahan v. Edgewater Care & Rehab. Ctr., Inc.*, 872 N.E.2d 551 (Ill. 2007), the Illinois Supreme Court has yet to decide the issue. Here, pre-emption would bar Plaintiff's retaliatory discharge claim because the Illinois Whistleblower Act does not apply to internal complaints – those made to one's employer – like Plaintiff alleges in this case. (Ex. 1, ¶¶60-63.)

constitutional provision has been violated, however, is not sufficient to state a claim of retaliatory discharge. *Fowler*, 653 F. Supp. at 694. Instead, courts must examine the "history, purpose, language and effect" underlying the cited provisions to determine whether a clear mandate of public policy, justifying an exception to the general rule of at-will employment, exists. *Id.*

As mentioned above, Plaintiff here does not identify a statute, constitutional provision, or even regulation that he claims ITP violated, let alone demonstrate the clear mandate of public policy that would render his termination potentially wrongful. Plaintiff simply states that . . .

> ITP terminated Lyssenko in retaliation for Lyssenko's inquiries and challenges to Borys and Crowley concerning the legality of awarding ITP construction projects to Kurkenbach's friend rather than utilizing the public-bidding system. (Ex. 1, ¶65.)

. . . and then Plaintiff concludes that . . .

> Public policy favors compliance with the requirements of the public-bidding system and full disclosure and truthfulness in financial reports to investors. (Ex. 1, ¶66.)

Plaintiff fails to even cursorily mention a provision of state (or federal) law that he believes sets forth a clear mandate of public policy that was in turn violated by his discharge, thus providing the Court (and Defendant) with no basis for determining whether such a mandate indeed exists. Plaintiff's reliance upon vague, conclusory statements regarding what he believes the state of the law should be, and his claims that ITP's actions were therefore in violation of his version of the law's requirements is insufficient. A claim for retaliatory discharge cannot rest on a plaintiff's "idiosyncratic view of the law's demands." *Arres*, 333 F.3d at 814; *see also Murphy v. Jason Inc.*, 362 F. Supp. 2d 976, 981 (N.D. Ill. 2005) (Gettleman, J.) (stating that without cause for whistleblowing, employee's actions counter to employer's interests are simply insubordination). Plaintiff must instead have a reasonable objective basis for his belief that ITP

was in violation of a clearly mandated public policy, and Plaintiff alleges none here.  *See Lang v. Northwestern Univ.*, 472 F.3d 493, 494-95 (7th Cir. 2006) (stating that an employee's fanciful interpretation of what the law requires cannot immunize the employee from termination).  Even if Plaintiff made the complaints to ITP representatives that he alleges, his complaints cannot form the basis of a retaliatory discharge claim without a basis to believe that ITP's actions were in violation of law.[5]  *Id.* at 495-96.

Based on the foregoing, Plaintiff alleges no basis for this Court to apply the limited and narrow exception to at-will employment carved out by the Illinois courts.  Count III should be dismissed.

## IV.    Count IV Fails to State a Claim for Defamation *Per Se*.

Count IV of the Complaint purports to state a claim for defamation *per se*.  The single statement identified by Plaintiff cannot support a claim of defamation *per se* because it does not have a precise and readily understood meaning and because it is not a false statement of objectively verifiable fact.

Illinois courts recognize only five categories of statements as bases for defamation *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those prejudicing a particular party in his or her profession or trade; and (5) those imputing that a person has engaged in adultery or fornication.  *Hopewell v. Vitullo*, 701 N.E.2d 99, 102 (Ill. Ct. App. 1998).  Statements are defamatory *per se* only when they are "so obviously and naturally harmful" to the plaintiff on

---

[5] Although Plaintiff refers in general to a public policy regarding truthfulness in financial reports to investors, (Ex. 1, ¶66), Plaintiff does not allege that ITP made any untruthful financial report.

their face that injury to reputation and damages may be presumed.  *Owen v. Carr*, 497 N.E.2d 1145, 1148 (Ill. 1986).

Moreover, even a statement that falls into one of the *per se* categories is not actionable defamation in Illinois unless the plaintiff can demonstrate that the alleged statement is not protected speech under the First Amendment of the United States Constitution.  *Hopewell*, 701 N.E.2d at 102.  Statements that cannot be reasonably interpreted as stating actual facts about the plaintiff are protected by the First Amendment, as "nonactionable opinion."  *Id.* at 102, 103 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).

In determining whether a statement is "nonactionable opinion" protected by the First Amendment, Illinois courts should consider, among other factors, whether the alleged statement has a "precise and readily understood meaning" and whether the alleged statement contains an "objectively verifiable assertion."  *Hopewell*, 701 N.E.2d at 103-104.  Language that does not have a "precise and readily understood meaning" is not actionable as defamation *per se*. "[O]verly loose, figurative, rhetorical, or hyperbolic language . . . negates the impression that a statement actually presents facts" and, accordingly, is protected by the First Amendment.  *Id.*

A statement must also contain an "objectively verifiable assertion" to be actionable.  *Id.* (finding that "fired because of incompetence" was nonactionable opinion because it could not be verified; it "is so ambiguous and indefinite that any inferable facts flow from numerous possible facts that might conceivably support the conclusion that [plaintiff] was 'incompetent.'"); *see also Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (stating that an "allegedly defamatory statement must contain an objectively verifiable factual assertion").  This last consideration – whether the statement contains an "objectively verifiable assertion" – is to be

given the most emphasis when determining whether a statement is protected.  *Hopewell*, 701 N.E.2d at 103.

Application of these principles to the single statement alleged by Plaintiff demonstrates that his claim for defamation *per se* must be dismissed.  To satisfy the notice pleading requirements of the federal courts, a plaintiff must set forth in his complaint the words alleged to be defamatory.  *See, e.g., Robinson v. Morgan Stanley*, No. 06 C 5158, 2007 WL 2815839, *7 (N.D. Ill. Sept. 24, 2007) (plaintiff must "set forth the defamatory language with enough specificity for the defendant to respond appropriately").

The only statement set forth by Plaintiff as defamatory is that Borys allegedly told a government representative that Plaintiff had "burned bridges" within the government.[6]  This statement is not defamatory *per se*, as a matter of law.  Even accepting Plaintiff's contention that the alleged statement fits within one of the categories for defamation *per se* – which it does not[7] – the statement is protected speech under the First Amendment because it does not have a "precise and readily understood meaning."  To the contrary, it is just the type of loose, hyperbolic language protected by the Constitution.  *Hopewell*, 701 N.E.2d at 104 (finding that "fired because of incompetence" was nonactionable opinion because the "broad scope" of "incompetence" rendered the statement "lacking the necessary detail for it to have a precise and

---

[6] Specifically, Plaintiff alleges only that "[i]n September, 2007, ITP's agent and CEO Borys told an OSD representative that Lyssenko 'burned bridges' within the government and implied that ITP terminated Lyssenko for that reason."  (Ex. 1, ¶72, 79.)

[7] The statement that Plaintiff had "burned bridges" does not comfortably fit into any of the categories of defamatory *per se* statements.  It does not impute the commission of a crime, infection with a communicable disease, an inability to perform or want of integrity in the discharge of duties of office or employment, or that Plaintiff engaged in adultery or fornication.  Nor does it prejudice Plaintiff in his profession or trade.  In sum, stating that Plaintiff "burned bridges" is not "so obviously and naturally harmful" to Plaintiff as to support a defamation *per se* claim.

-10-

readily understood meaning" in relation to the allegedly defamatory statement).    Plaintiff's defamation claim must therefore be dismissed.

Moreover, a jury could not determine whether the statement that Plaintiff had "burned bridges" is true or false.  *See Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998) (statement that plaintiff is "a very poor lawyer" was not actionable defamation because the statement "is so difficult to refute or verify that it cannot feasibly be made a subject of inquiry by a jury"; it "would be unmanageable to ask a court . . . to determine whether 'in fact' Sullivan is a poor lawyer."); *Hopewell*, 701 N.E.2d at 103-104 (finding that "fired because of incompetence" was nonactionable opinion because it could not be verified).   *See also Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (collecting terms deemed "mere hyperbole," including "scab," "traitor," "amoral," "scam," "fake," "phony," a "snake-oil job," "he's dealing with half a deck," and "lazy, stupid, crap-shooting, chicken-stealing idiot"); *Horowitz v. Baker*, 523 N.E.2d 179 (Ill. Ct. App. 1988) (newspaper article's use of the terms "sleazy," "cheap," "pull a fast one," and "rip-off" to describe transaction involving plaintiff were "no more than 'rhetorical hyperbole'" and were therefore not actionable).  The statement that Plaintiff "burned bridges" does not purport to state any verifiable fact about Plaintiff and, thus, cannot form the basis of a claim for defamation *per se*.

Because Plaintiff's only specific statement is neither readily understood nor objectively verifiable, Count IV should therefore be dismissed.

## V.    <u>Count VI Fails to State a Claim under the Illinois Uniform Deceptive Trade Practice Act</u>.

Finally, Count VI of the Complaint fails to state a claim for violations of the Illinois Uniform Deceptive Trade Practices Act (the "Act"), 815 ILCS 510/1 *et seq.*  Not only are Plaintiff's allegations are insufficient to state a claim under the Act, but by attempting to contort

those allegations to fit within a clearly inapplicable statute, provide a ready example of Plaintiff's overreaching.

While Plaintiff does not specify which portion of the Act he claims has been violated, his allegations appear to be aimed at Section 2(a)(8), which states that a person engages in a deceptive trade practice when, in the course of his or her business, the person "disparages the goods, services, or business of another by false or misleading representation of fact."  815 ILCS 510/2(a)(8).  Plaintiff's allegations in Counts VI and VII fail to state a claim for several reasons: (1) the Act was not intended to cover disputes arising out of the employment context, (2) Plaintiff fails to allege a misrepresentation of fact, and (3) Plaintiff fails to allege a likelihood of future harm, rendering injunctive relief inappropriate.

**A.    The Act is aimed at deceptive trade practices, not disputes between an employee and his former employer.**

As an initial matter, disputes between an employee and his former employer are simply not the type of conflict the Act was intended to cover.  *See, e.g., Juszczak v. Blommer Chocolate Co.*, No. 97 C 9000, 1999 WL 1011954, *9 (N.D. Ill Sept. 30, 1999) (Williams, J.) (dismissing UDTPA claim by a former employee against former employee because the Act was "simply not intended to bear claims like [plaintiff's]").  Instead, the Act was generally intended to prohibit unfair *trade practices*, as a codification of the common law tort of commercial disparagement.[8] *See, e.g., Disc Jockey Referral Network, Ltd. v. Ameritech Pub. of Illinois*, 596 N.E.2d 4, 9 (Ill.

---

[8] The courts have consistently drawn a line between claims for defamation and claims for commercial disparagement (including those under the Act).  *See, e.g., Global Relief Found. v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, *13 (N.D. Ill. Sept. 11, 2002) (Coar, J.).  A "clear line of demarcation" is generally drawn between the two claims.  *Crinkley v. Dow Jones and Co.*, 385 N.E.2d 714, 719-20 (Ill. Ct. App. 1978); *Global Relief Found.*, 2002 WL 31045394 at *13 (noting that allowing alleged defamation against a businessman to give rise to a claim under the Act "improperly 'blur[s] the distinction between defamation and commercial disparagement").

Ct. App. 1992) (stating that the "Act was not intended to be a consumer protection statute but rather was intended to prohibit unfair competition"); *Menasha Corp. v. News Amer. Mkt'g In-Store, Inc.*, 238 F. Supp. 2d 1024, 1035 (N.D. Ill. 2003) (stating the Act "was designed to address conduct involving either misleading trade identification or false and deceptive advertising"). While the Act does provide for limited relief for individuals, that relief is limited to *consumers* who are at risk of future harm from a company's deceptive trade practices. *See Greenberg v. United Airlines*, 563 N.E.2d 1031, 1037 (Ill. Ct. App. 1990) (discussing claim brought by airline passengers regarding representations made about a frequent-flyer program). An employer's alleged comments about a former employee simply do not fall within the ambit of this Act.

> **B.    Plaintiff's allegations are insufficient, as he does not identify a false representation of fact.**

Even if a statement by a former employer could fit within the scope of the Act, Plaintiff's claim still fails. Plaintiff's sole allegation of wrongdoing to support his claims under the Act is the same statement supporting his defamation claim: that "Borys told an OSD representative that Lyssenko 'burned bridges' within the government and implied that ITP terminated Lyssenko for that reason." (Ex. 1, ¶¶85, 90.)

This single allegation fails to set forth a false representation of fact, as required to state a claim under the Act, and therefore Plaintiff's claim under the Act fails for the same reason as does his defamation claim (discussed more fully in Section IV, above). Even assuming the truth of Plaintiff's allegations, the statement alleged to have been made by Borys is nonactionable opinion, protected by the First Amendment, not a potentially actionable statement of verifiable fact. *See* 815 ILCS 510/2(a)(8) (requiring that defendant have made a "false or misleading representation of fact"). Such a statement can no more support a claim under the Act than it

could a claim for defamation.  Plaintiff's allegations are therefore deficient and his claims under the Act should be dismissed.[9]

### C.    Injunctive relief – the only relief available to Plaintiff – is inappropriate because there is no risk of future harm.

Even if the acts Plaintiff complains of were of the type prohibited by the Act and were supported by sufficient allegations, his claim in Count VI would still fail.  The Act does not provide a cause of action for damages; instead, it provides only for private suits for injunctive relief.  *See Disc Jockey Referral Network*, 596 N.E.2d at 9; *Comtel Technologies, Inc. v. Paul H. Schwendener, Inc.*, No. 04 C 3879, 2005 WL 433327, *10 (N.D. Ill. Feb. 22, 2005) (Moran, J.). Because of the limited relief available upon private actions, courts have recognized that plaintiffs have an onerous task to successfully plead a cause of action.  Plaintiff's allegations must establish a likelihood of future harm – and without such allegations, injunctive relief is precluded and the claim is dismissed.  *See, e.g., Disc Jockey*, 596 N.E.2d at 9-10.

Plaintiff's allegations do not establish a likelihood of future harm, and therefore must be dismissed.  In Count VI, Plaintiff makes the single allegation that in September 2007, Borys told a government representative that Plaintiff had "burned bridges."  (Ex. 1, ¶79.)  Plaintiff alleges no facts indicating a likelihood that future violations of the Act are likely to occur.  Plaintiff's claims are therefore analogous to those in *Comtel*, where the plaintiffs alleged that the defendants had made disparaging misrepresentations about plaintiffs' work.  *Comtel*, 2005 WL 433327, at *10.    However, the plaintiffs made no allegations indicating that the misrepresentations were continuing or were likely to occur in the future.  *Id.*  The *Comtel* court

---

[9] Plaintiff's allegations are further insufficient as he fails to allege that Borys was acting in the course of business when he made the alleged statement.  *See* 815 ILCS 510/2(a)(8) (deceptive trade practice must be in the course of business to be prohibited).

found that there was no need for injunctive relief, and dismissed the plaintiffs' claims under the Act. *Id.* ("Absent a threat of future disparaging misrepresentations, there is no need for injunctive relief and, therefore, no claim under the UDTPA."). Here too, without a likelihood of future harm, injunctive relief – Plaintiff's only recourse under the Act – is inappropriate. Count VI should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant International Titanium Powder, L.L.C. respectfully requests that this Court dismiss Counts II, III, IV, and VI of Plaintiff's Complaint with prejudice, and grant such other relief as the Court may consider just.

Dated: December 21, 2007            Respectfully submitted,


                                    /s/_____Matthew D. Lahey_____

                                    Matthew D. Lahey
                                    Lee Ann Rabe
                                    Schiff Hardin LLP
                                    6600 Sears Tower
                                    Chicago, IL 60606
                                    (312) 258-5500
                                    (312) 258-5600

                                    *Attorneys for Defendant, International Titanium Powder, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on December 21, 2007, he electronically filed the foregoing Defendant's Motion to Dismiss and Memorandum in Support with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to the following:

Anthony J. Carballo
Gia F. Colunga
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
(312) 360-6000
tcarballo@freebornpeters.com
gcolunga@freebornpeters.com

/s/_____Matthew D. Lahey_____

CHI\5383882.1