**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| TARAS LYSSENKO, | |
| Plaintiff, | |
| v. | Case No.  07 C 6678 |
| INTERNATIONAL TITANIUM POWDER, LLC and STANLEY BORYS, | Judge Robert W. Gettleman |
| | Magistrate Judge Martin C. Ashman |
| Defendants. | |

**PLAINTIFF LYSSENKO'S OPPOSITION**
**TO THE MOTIONS TO DISMISS OF DEFENDANTS ITP AND BORYS**

**INTRODUCTION**

In 2002, Defendant International Titanium Powder, LLC ("ITP") approached Plaintiff Taras Lyssenko ("Lyssenko") with a request. (Compl. at ¶ 8, Docket No. 1.) In particular, ITP informed Lyssenko about its development of low-cost titanium and asked Lyssenko to assist it in obtaining government funding. (*Id.* at ¶¶ 8-9.) After negotiation, Lyssenko entered into an agreement with ITP, pursuant to which Lyssenko was to receive payment in an amount equal to five percent of all government funds obtained for ITP through Lyssenko's government relations and marketing efforts. (*Id.* at ¶¶ 1, 9-11.) Lyssenko's efforts paid off. (*Id.* at ¶ 30.) In fact, by 2007, Lyssenko had secured approximately $16.75 million in government funds for ITP and, in future years, ITP was likely to receive millions more due to his work. (*Id.*)

Despite Lyssenko's hard work and successful efforts on behalf of ITP, ITP's CEO Defendant Stanley Borys ("Borys") and others at ITP began criticizing him. (*Id.* at ¶ 31.) For instance, ITP displayed frustration when Lyssenko questioned the legality of its decision to refrain from using the public-bidding system and asked if ITP had revealed that decision in its reports. (*Id.* at ¶¶ 34-35.) Then, in August 2007, ITP terminated Lyssenko. (*Id.* at ¶ 37.)

Moreover, ITP refused to pay Lyssenko the remaining amount owed to him, equal to five percent of all government funds obtained by ITP as a result of Lyssenko's efforts. (*Id.* at ¶¶ 38-39.) Finally, Borys and others at ITP began defaming and disparaging Lyssenko's good name throughout Capital Hill, the Department of Defense, and elsewhere. (*Id.* at ¶ 40.) For instance, Borys told an OSD representative that Lyssenko was terminated because he has "burned bridges" within the government, thus implying that Lyssenko would do a poor job as a lobbyist or any other job relating to government. (*Id.* at ¶ 41.)

As a result, Lyssenko filed the present lawsuit, asserting claims against ITP for breach-of-contract, unjust enrichment, retaliatory discharge, defamation, and violation of the Uniform Deceptive Trade Practices Act ("UDTPA"), and claims against Borys for defamation and violation of the UDTPA. (*See* Compl.) In response, ITP has denied the allegations of the breach-of-contract claim and asserted a Counterclaim against Lyssenko. (*See* Answer to Complaint and Counterclaim, Docket No 9.) Also, pursuant to Federal Rule of Civil Procedure 12(b)(6), ITP and Borys moved to dismiss Lyssenko's claims for unjust enrichment, retaliatory discharge, defamation, and violation of the UDTPA, with Borys adopting ITP's arguments relating to the defamation and UDTPA claims. (*See* ITP Mot. and Memo., Docket Nos. 10 and 11; Borys Mot., Docket No. 14) But, as thoroughly discussed below, Lyssenko's Complaint sufficiently sets forth the necessary legal and factual allegations. Thus, there is no merit to Defendants' Motions to Dismiss, and this Court should deny both Motions.

## ARGUMENT

Federal courts recognize that a "dismissal is a drastic measure," and dismissals for the failure to state a claim pursuant to Rule 12(b)(6) "are not favored." *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 940 F. Supp. 176, 178 (N.D. Ill. 1996) (drastic measure); *Indeck Power*

*Equip. Co. v. Jefferson Smurfit Corp.*, 881 F. Supp. 338, 342 (N.D. Ill. 1995) (not favored). Therefore, a motion to dismiss cannot be granted if the plaintiff "allege[s] the operative facts upon which each claim is based and include[s] allegations in the complaint that plausibly suggest that the plaintiff has a right to relief." *Follman v. Hospitality Plus of Carpentersville, Inc.*, No. 07 C 2934, 2007 WL 3052962, at *1 (N.D. Ill. Oct. 17, 2007). In making this determination, "the court must accept as true all the allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." *Marquez v. Partylite Worldwide*, Inc., No. 07 C 2024, 2007 WL 2461667, at *1 (N.D. Ill. Aug. 27, 2007). As demonstrated below, Defendants have not – and cannot – satisfy their burden of demonstrating that the facts alleged do not plausibly suggest a right to relief. Accordingly, this Court should deny the Defendants' Motions to Dismiss.

I.    **Lyssenko Has Properly Alleged The Elements Of Unjust Enrichment In The Alternative To His Breach-of-Contract Claim.**

To state a claim for unjust enrichment, the plaintiff "need only allege that there has been unjust retention of a benefit to the plaintiff's detriment." *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 827 (N.D. Ill. 1998) (Gettleman, J.) Lyssenko clearly meets this pleading requirement, for the Complaint details that "Lyssenko expended significant resources, manpower, and money in lobbying for ITP and promoting ITP's business development," and ITP inequitably retained the benefit of his efforts "through the governmental funds already secured, which total approximately $16.75 million" and "the business transactions and connections already made, such as the Boeing Company purchases ... without providing full payment to Lyssenko." (Compl. at ¶¶ 49-55.) Despite these allegations, ITP argues for the dismissal of the unjust-enrichment claim because Lyssenko admitted receiving some payments from ITP and he also asserted a breach-of-contract claim. (Memo. at 4-5.)

Neither of these arguments has merit however.  First, the unjust-enrichment pleading standard does not require proof that the plaintiff received nothing from the defendant.  Rather, as this Court expressly stated, the plaintiff has a claim for unjust enrichment if he alleges the defendant's unjust retention of *any benefit* to his detriment.  *See Dames*, 21 F. Supp. 2d at 827.  Thus, because Lyssenko's Complaint alleges that the amount provided by ITP was not "full payment," "full recompense," or otherwise equal to the value of his services, his Complaint adequately sets forth the "unjust retention of a benefit" for his claim.  *Id.*; (Compl. at ¶¶ 54-55.)

Second, Lyssenko's breach-of-contract claim does not bar his unjust-enrichment claim at this stage.  The Federal Rules of Civil Procedure expressly permits pleading in the alternative.  FED. R. CIV. PRO. 8(d)(2) ("A party may set forth 2 or more statements of a claim or defense alternatively or hypothetically, either in one single count of defense or in separate ones.").  This allows for "the use of discovery to winnow or refine theories of liability." *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 719 (7th Cir. 1998); *cf. Air Exch. v. BCI Aircraft Leasing*, No. 00 C 2551, 2001 WL 185475, at *4 (N.D. Ill. Feb. 26, 2001) (pleading breach-of-contract and unjust enrichment is appropriate when "the parties disagree on a core element of their contract [as] it is entirely possible that, at a later stage of the case, the court may rule there was no true meeting of the minds").  Therefore, while one ultimately may not recover for both breach-of-contract and unjust-enrichment claims, the "plaintiff is entitled to plead in the alternative in [his] complaint." *3Com Corp. v. Elec. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 940 (N.D. Ill. 2000).  And this is true even when the complaint does not specify that the claim for unjust enrichment is in the alternative to the breach-of-contract claim or when all prior allegations are incorporated by reference into the unjust-enrichment count.  *See Gershengorin v. Vienna Beef, Ltd.*, No. 06 C 6820, 2007 WL 2840476, at *5 (N.D. Ill. Sept. 28, 2007) (finding the prior allegations

incorporated as not controlling because "[w]hile the facts alleged in the prior counts are incorporated in Count V, that does not mean the legal conclusions are also incorporated"); *3Com*, 104 F. Supp. 2d at 941 (no express alternative pleading); *Poindexter v. Nat'l Mortgage Co.*, No. 94 C 5814, 1995 WL 242287, at *7 (N.D. Ill. Apr. 24, 1995) (same).

As a result, the Northern District Court of Illinois routinely denies requests to dismiss unjust-enrichment claims based on the complaint's inclusion of a breach-of-contract claim, and this Court should do the same here. *See, e.g, Gershengorin*, 2007 WL 2840476, at *5 (denying dismissal).[1] The mere fact that Lyssenko alleges claims for both unjust enrichment and breach-of-contract does not justify the "drastic measure" of a dismissal. *See Gallagher*, 940 F. Supp. at 178. Therefore, this Court should deny ITP's request to dismiss the unjust-enrichment claim.

## II.    Lyssenko's Retaliatory-Discharge Claim Is Valid, As His Discharge Based On ITP's Failure To Comply With The Public-Bidding System And Disclosures In Financial Reports Violates Clearly Mandated Public Policy.

A complaint properly sets forth a claim for retaliatory discharge if the allegations include: (i) the employee's discharge; (ii) the discharge was in retaliation for the employee's actions; and (iii) the discharge violates a clear mandate of public policy. *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991). Lyssenko's Complaint meets this standard. The Complaint specifically alleges that (i) ITP terminated Lyssenko's employment, (ii) the termination was in retaliation for his inquiries to ITP concerning the public-bidding process, the award of business to a friend, the need to disclose that financial transaction in a full and truthful manner, and (iii) that the discharge in retaliation for such inquiries violates clearly mandated public policy.

---

[1] *See also River West Meeting Assocs., Inc. v. Avaya, Inc.*, No. 03 C 1023, 2004 WL 422683, at *2-3 (N.D. Ill. Mar. 4, 2004) (same); *Air*, 2001 WL 185475, at *4; *Zic v. The Italian Gov't Travel*, 130 F. Supp. 2d 991, 997 (N.D. Ill. 2001) (same); *Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 964 (N.D. Ill. 2000) (same); *3Com*, 104 F. Supp. 2d at 940-41 (same); *Poindexter*, 1995 WL 242287, at *7 (same); *Citicorp Leasing, Inc. v. Meridan Leasing Corp.*, No. 91 C 7810, 1992 WL 211050, at *3 (N.D. Ill. Aug. 27, 1992) (same); *Quadion Corp. v. Mache*, 738 F. Supp. 270, 278 (N.D. Ill. 1990) (same).

(Compl. at ¶¶ 56-69.)   It is irrelevant that the Complaint omits reference to a particular law addressing the public policies.   ITP merely needs to review the Complaint's allegations to see the public policies at issue, for paragraphs 66 and 67 specify that "[p]ublic policy favors compliance with the requirements of the public-bidding system and full disclosure and truthfulness in financial reports to investors," and that the "discharge of Lyssenko in retaliation for his inquiries" regarding such compliance and disclosure "violate a clear mandate of public policy." Besides, the law does not require citation to the governing statute or case in the complaint. *Sciortino v. Winnebago County Hous. Auth.*, No. 94 C 50375, 1996 WL 153687, at *2 (N.D. Ill. Apr. 2, 1996); *Carty v. Suter Co.*, 371 Ill. App. 3d 784, 789, 863 N.E.2d 771, 775 (2nd Dist. 2007).

Moreover, the Illinois Supreme Court made clear that public policy favors the use of the public-bidding system for purposes of "inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption and to secure the best work or supplies at the lowest price practicable." *Court St. Steak House, Inc. v. County of Tazewell*, 163 Ill. 2d 159, 165, 643 N.E.2d 781, 784 (1994).   In essence, the public-bidding system ensures that the government gets the best value for its money.   As such, ITP hardly can claim that the government and general public does not benefit from the public-bidding system, or that there is no violation of public policy by firing someone for questioning why it neglected to use the bidding system and instead awarded a job to a friend who charged more than the market value.

That is exactly what happened in the present case.   As stated in the Complaint, ITP receives millions of dollars from the government to fund its research and development of low-cost titanium. (Compl. at ¶¶ 8, 30.)   In the summer of 2007, ITP's engineer planned to use the public-bidding system for a new titanium project.   (*Id.* at ¶¶ 58-59.)   ITP chose not to use the

- 6 -

public-bidding system however, and Lyssenko subsequently questioned ITP about the legality of this decision and the need to report the decision in its financial reports. (*Id.* at ¶¶ 56-64.) Lyssenko reasonably believed that ITP was required to use the bidding system because "the construction jobs were funded in part by government funds" and "ITP's engineer had planned to use" that system. (*Id.* at ¶ 59.)[2] Additionally, common sense demonstrates why Lyssenko reasonably believed in the need to disclose the decision not to use competitive bidding and instead to award the project to a friend who charged ten percent more than the market value.

Furthermore, on numerous occasions, courts have ruled that a discharge in retaliation for raising concerns about the full and truthful disclosure of financial information to others constitutes a violation of a clearly mandated public policy:

> [W]e find that public policy favors full disclosure, truthfulness and accuracy in the financial reports made by businesses to the government and to the public, and that an employee who voices objection to practices which he reasonably believes violate this policy should be protected from being discharged as a result of such objection.

*Johnson v. World Color Press, Inc.*, 147 Ill. App. 3d 746, 750, 498 N.E.2d 575, 578 (5th Dist. 1986); *see also Rojo v. Mobile Mgmt. Co.*, No. 95 C 3449, 1995 WL 549084, at *2-3 (N.D. Ill. Sept. 8, 1995) (reporting all income tax); *Youker v. Schoenenberger*, 763 F. Supp. 361, 363-64 (N.D. Ill. 1991) (reporting use of tax exemptions); *Russ v. Pension Consultants Co.*, 182 Ill. App. 3d 769, 775-77, 538 N.E.2d 693, 696-98 (1st Dist. 1989) (falsifying dates in financial documents); *Petrik v. Monarch Printing Corp.*, 111 Ill. App. 3d 502, 508, 444 N.E.2d 588, 592-93 (1st Dist. 1982) (reporting discrepancies in the corporation's financial records); *cf. Miller-Calabrese v. Cont'l Grain Co.*, No. 96 C 6626, 1997 WL 392340, at *6 (N.D. Ill. July 8, 1997) (refusing to misreport non-financial data to a governmental agency). These courts explain that

---

[2] These circumstances clearly are distinguishable from the plaintiff's "idiosyncratic view of the law's demands" in *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812 (7th Cir. 2003), as the *Arres* plaintiff consulted with a lawyer and chose to disregard the lawyer's interpretation of the law.

because a "corporation can speak only through its records," "the record of its acts must be kept faithfully in order to protect the rights of stockholders and persons doing business with the corporation." *Johnson*, 147 Ill. App. 3d at 750, 498 N.E.2d at 577.

This rationale is especially important in the present case because one of the main "persons doing business" with ITP is the government. In fact, ITP received approximately $16.75 million in government funds already and should receive another $50 million to $150 million in the future. (Compl. at ¶ 30.) No doubt the government relies on ITP to disclose the use of those governmental funds in a full and truthful manner. Additionally, ITP's investors surely expect ITP to disclose its financial transactions properly. Nevertheless, when Lyssenko questioned why ITP awarded a job to a friend rather than using the competitive bidding system and if ITP reported this decision, ITP took no action, other than to terminate Lyssenko's employment. (*Id.* at ¶¶ 56-69.) This termination constituted a retaliatory discharge. Yet, this Court need not make that determination now; the Court simply must rule on whether Lyssenko adequately pled a claim for retaliatory discharge. As shown above, Lyssenko did so. Thus, the Court should reject ITP's request to dismiss the retaliatory-discharge claim.

## III. The *Per Se* Defamation Claims Must Stand Because The Totality Of The Circumstances Demonstrates That The Statement Is One Of Fact, Not Opinion.

To state a claim for *per se* defamation, the plaintiff must allege that the defendant made a false, unprivileged statement about the plaintiff to a third person, and that statement falls into one of the five categories of *per se* defamation. *Solaia Tech., LLC v. Speciality Publ'g Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825, 839 (2006). The five categories of *per se* defamation are words: (i) imputing the commission of a crime; (ii) imputing infection with a loathsome communicable disease; (iii) imputing the inability to perform or the lack of integrity in performing one's employment duties; (iv) prejudicing one in his trade, profession, or business; and (v) imputing

- 8 -

the engagement of adultery or fornication. *Solaia*, 221 Ill. 2d at 579-80, 852 N.E.2d at 839.

Further, the statement must qualify as fact rather than constitutionally-protected opinion. *Brysan*

*v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 99-100, 672 N.E.2d 1207, 1219-20 (1996).

The United States Supreme Court has rejected any "artificial dichotomy" between fact

and opinion however. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). A statement may

qualify as fact and defamatory "even when couched within apparent opinion or rhetorical

hyperbole" or "made in the form of insinuation, allusion, irony, or question." *Solaia*, 221 Ill. 2d

at 581, 852 N.E.2d at 840. As such, courts conduct "a four-part analysis to determine whether a

statement implies factual allegations" rather than opinion by considering: "(1) whether the

statement has a precise core of meaning; (2) whether the statement is objectively verifiable; (3)

whether the literary context of the statement implies that it has a factual content; and (4) whether

the broader social context in which the statement appears implies fact or opinion." *Millelman v.*

*Witous*, 135 Ill. 2d 220, 243, 552 N.E.2d 973, 984 (1990) (analysis), *abrogated on other grounds*

*by Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 619 N.E.2d 129 (1993); *Imperial*

*Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 367 Ill. App. 3d 48, 52-53, 853 N.E.2d 770, 775

(1st Dist. 2006) (four considerations).[3]    Additionally, when conducting this analysis, courts must

examine "the totality of the circumstances." *Imperial*, 367 Ill. App. 3d at 53, 853 N.E.2d at 776.

In short, the analysis is "restrictive: a defamatory statement is constitutionally protected only if it

cannot be *reasonably interpreted* as stating actual fact." *Solaia*, 221 Ill. 2d at 581, 852 N.E.2d at

840 (emphasis added); *see Milkovich*, 497 U.S. at 20.

Here, ITP's CEO Borys told a representative of the Office of the Secretary of Defense

("OSD") that Lyssenko "burned bridges" within the government and ITP terminated Lyssenko's

---

[3] Defendants conveniently omit two of those four steps in their Motions to Dismiss. But when determining whether to issue the drastic and disfavored measure of a dismissal for the failure to state a claim, this Court can and should complete the full analysis.

employment for that reason. (Compl. at ¶¶ 40-41, 72, 79.) This statement is *per se* defamation because the main goal of a lobbyist is to influence or sway a government official toward a desired action, and if Lyssenko damaged his relationship with government officials by burning bridges, he would be unable to influence them toward a desired action. Stated differently, the statement imputes Lyssenko's ability to perform his job, imputes a lack of integrity in performing his job duties, and prejudices him in his profession. (*Id.* at ¶¶ 73, 76, 80, 83.)

Despite this, Defendants seek to dismiss the claim, arguing that the statement does not have a precise meaning and is not objectively verifiable. (Memo. at 8-11.) In other words, Defendants argue that the statement is constitutionally-protected opinion based on two of the four factors mentioned above. This argument is wrong for several reasons. Most importantly, the law requires an examination of the "totality of the circumstances," making it impossible to consider any one factor in isolation. *See Imperial*, 367 Ill. App. 3d at 53, 853 N.E.2d at 776. And when one considers all factors and the circumstances as a whole, it is clear that the statement made by ITP's CEO Borys is not a protected opinion.

Furthermore, the statement does have a "precise core of meaning." To "burn another's bridges" is a commonly-used phrase that means to damage a relationship with another. Contrary to Defendants' suggestion, the fact that the phrase may qualify as a hyperbole or an allusion does not render it imprecise. *Solaia*, 221 Ill. 2d at 581, 852 N.E.2d at 840. In fact, Illinois courts have found phrases with far more hyperbole, allusion, and insinuation as constituting facts, such as the plaintiff is like the "Iraq Information Minister," is "working a scam," is "not for real," was at "fault" for a loss, and created something "essentially worthless." *See Solaia*, 221 Ill. 2d at 584, 852 N.E.2d at 841-42 (the phrase "essentially worthless," "[u]nder its metaphorical chaff hides a kernel of fact"); *Millelman*, 135 Ill. 2d at 245-48, 552 N.E.2d at 985-86 (at "fault"); *Kolegas v.*

- 10 -

*Heftel Broad. Corp.*, 154 Ill. 2d 1, 11-14, 607 N.E.2d 201, 207-08 (1992) ("not real" and scamming"); *Imperial*, 367 Ill. App. 3d at 53-54, 853 N.E.2d at 776-77 ("Iraq Information Minister"); *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 225, 617 N.E.2d 191, 198 (1st Dist. 1993) ("working a scam"). Moreover, the defamatory statement includes more than the quoted "burned bridges" phrase, and those words provide further precision. *See* 135 Ill. 2d at 230-31, 552 N.E.2d at 978 (rejecting the argument that a defamatory statement was not set forth with enough specificity or precision when the statement was not enclosed in quotation marks, explaining that verbal statements are "often difficult to reproduce verbatim").

Additionally, the statement – when considered in its entirety as this Court must – is an objectively-verifiable fact. In particular, a jury can determine if the reason that ITP terminated Lyssenko's employment was Lyssenko's relationship with the government. (Compl. at ¶¶ 40-41, 72, 79.) The jury may not believe that Lyssenko's relationship with the government had anything to do with his termination. Instead, as the retaliatory-discharge claim alleges, the jury may conclude that ITP terminated Lyssenko because he questioned the company's failure to use the public-bidding system. (Id. at ¶¶ 56-69.)

Finally, the statement's "precise core of meaning" and verifiability become even more obvious when the Court considers the "literary context" and "broader social context" of the statement. *See Imperial*, 367 Ill. App. 3d at 52-53, 853 N.E.2d at 775. As the Complaint notes, Borys made the statement shortly after terminating Lyssenko's employment, and he made the statement to an OSD representative. (Compl. at ¶¶ 37, 40-41, 72, 79.) Because Lyssenko was no longer working for ITP, there was no business reason for discussing Lyssenko's work with the OSD. Thus, the OSD representative would recognize that Borys used the phrase "burned bridges" in a negative sense to explain why Lyssenko was no longer doing ITP's lobbying.

Additionally, the OSD representative no doubt understood the phrase "burned bridges," for, besides its common usage, the phrase alludes to the military action of burning bridges to prevent enemies from crossing. Thus, when the Court examines all four factors and the circumstances as a whole, it is clear that Borys' statement is not opinion and instead constitutes *per se* defamation. Accordingly, this Court must deny Defendants' request to dismiss the defamation claims.

**IV.    Lyssenko's Former-Employee Status, The Disparaging Statement, And The Request For Injunctive Relief Do Not Preclude The Deceptive Trade Practice Act Claims.**

The Uniform Deceptive Trade Practices Act ("UDTPA") establishes liability for those that engage in a deceptive trade practice and expressly states that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: ... disparages the goods, services, or business of another by false or misleading representation of fact." 815 ILCS § 510/2(a)(8) (2008). If one is "likely to be damaged by a deceptive trade practice of another," injunctive relief is proper. 815 ILCS § 510/3 (2008).

While its general purpose is "to prohibit unfair competition," the UDTPA "is primarily directed towards acts which unreasonably interfere with another's conduct of his business." *Phillips v. Cox*, 261 Ill. App. 3d 78, 81, 632 N.E.2d 668, 670 (5th Dist. 1994); *see also Francorp, Inc. v. Siebert*, 211 F. Supp. 2d 1051, 1054 (N.D. Ill. 2002) (same). To prevail with a UDTPA claim therefore, "a plaintiff need not prove competition between the parties," and courts construe the Act "liberally." 815 ILCS § 510/2(b) (no competition needed); *Francorp*, 211 F. Supp. 2d at 1054 (liberal construction); *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 875-76, 385 N.E.2d 714, 718-19 (1st Dist. 1978) (rejecting argument that UDTPA claim fails "because plaintiff and his former employer Searle are not competitors"). Indeed, the UDTPA defines "a person" who may be found liable for engaging in a deceptive trade practice very broadly, including "an individual, corporation, government or governmental subdivision or

agency, business trust, estate, trust, partnership, unincorporated association, 2 or more of any of the foregoing having a joint or common interest or any other legal or commercial entity." 815 ILCS § 510/1(5) (2008).

Notwithstanding the UDTPA's express text, Defendants contend that Lyssenko's UDTPA claims must fail because "disputes between an employee and his former employer are simply not the type of conflict the Act was intended to cover." (Memo. at 12.) This plainly is not true. As already stated, the Act prohibits the deceptive trade practices by any "person" and defines the word person broadly. *See* 815 ILCS § 510/1(5). To be clear, the definition section does not exclude employers. Rather, the UDTPA specifically "targets acts which unreasonably interfere with another's conduct of his business," and certainly an employer may unreasonably interfere with a former employee's business. *Francorp*, 211 F. Supp. 2d at 1054. Moreover, a quick review of caselaw reveals numerous disputes between employers and former employees governed by the UDTPA, and Defendants even cite to one of these cases in their Motions. *See, e.g.*, *In re Draiman*, No. 05 B 54315, 2007 WL 1876983, at *6 (N.D. Ill. June 22, 2006); *Francorp*, 211 F. Supp. 2d at 1053-55; *Unichem Corp. v. Gurtler*, 148 Ill. App. 3d 284, 287-92, 498 N.E.2d 724, 726-29 (1st Dist. 1986); *Crinkley*, 67 Ill. App. 3d at 875-76, 385 N.E.2d at 718-19 (rejecting argument that UDTPA claim fails "because plaintiff and his former employer Searle are not competitors") (cited by Defendants).[4] Besides, according to ITP, this case is not simply a employer-employee dispute, it's a dispute about wrongful competition. In its Counterclaim, ITP expressly alleges that Lyssenko "provid[ed] services, during his employment with ITP, to **direct competitors** of ITP and to entities who **competed** for federal funding with ITP." (Counterclaim at ¶ 14 (emphasis added).) Defendants may not have it both ways. Finally,

---

[4] This cases also demonstrate that the protection extended by the UDTPA to individuals is not limited to consumers as Defendants oddly contend. (Memo. at 13 ("While the Act does provide for limited relief for individuals, that relief is limited to *consumers*.").)

- 13 -

the case Defendants rely on to disclaim employer-employee disputes, *Juszczak v. Blommer Chocolate Co.*, No. 97 C 9000, 1999 WL 1011954, at *9 (N.D. Ill. Sept. 30, 1999), is not controlling, for the court denied the UDTPA claim because the plaintiff was "neither a consumer, borrower or businessman" to make the Act applicable, not because of an employee status.

No doubt realizing that their employer-employee argument lacks teeth, Defendants also argue for a dismissal based on the content of the disparaging statement. (Memo. at 13-14.) They claim that the statement does not constitute "a false representation of fact" and then re-discuss defamation law. (*Id.*) However, "defamation and commercial disparagement are separate and distinct torts," and the UDTPA prohibits a broader group of disparaging statements prohibiting both "false or misleading representation[s] of fact." 815 ILCS § 510/2(a)(8); *Crinkley*, 67 Ill. App. 3d at 876, 385 N.E.2d at 719. Yet, even if the same law applied, the statement made by ITP's CEO Borys falls within the UDTPA because a jury could find that whether "Lyssenko was terminated because he 'burned bridges' within the government" is a "false and misleading representation of fact." (Compl. at ¶¶ 40-41, 72, 79; *see also supra* III.)

Finally, Defendants make one other argument in hopes of dismissing the UDTPA claims. Defendants contend that Lyssenko failed to allege the "likelihood of future harm" for injunctive relief. (Memo. at 14-15.) This, once again, is not true. Lyssenko's Complaint specifically states that "Borys and others at ITP have been defaming and disparaging Lyssenko's good name throughout Capital Hill, the Department of Defense, and elsewhere," "ITP's agent and CEO Borys told an OSD representative that Lyssenko was terminated because he has 'burned bridges' within the government," and unless ITP and Borys are "enjoined from continuing to make such false statements, Lyssenko will continue to suffer immediate, substantial and irreparable harm." (Compl. at ¶¶ 40-41, 84-93.) These allegations sufficiently set forth the likelihood of future

- 14 -

harm, as they expressly note repeated defaming and disparaging statements to multiple persons, provide the Court with one particular example of the disparagement, and request the Court to prohibit Defendants "from continuing" to make disparaging statements. (*Id.*) Therefore, for all of these reasons, Lyssenko adequately alleges his UDTPA claims, and this Court should deny Defendants' request to dismiss them.

**CONCLUSION**

WHEREFORE, Plaintiff, Taras Lyssenko, respectfully requests that this Honorable Court (i) deny the Motions to Dismiss of International Titanium Powder, LLC and Stanley Borys; and (ii) award Taras Lyssenko such other and further relief that this Court deems appropriate.

Respectfully submitted,

TARAS LYSSENKO

By: /s/    Gia F. Colunga
    One of His Attorneys

Anthony J. Carballo
Gia F. Colunga
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
312.360.6000

Dated: February 11, 2008

1477418v2

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record for Plaintiff Taras Lyssenko, certifies that she caused a copy of Plaintiff Lyssenko's Opposition to the Motions to Dismiss of Defendants ITP and Borys to be served on upon:

> Matthew D. Lahey
> Lee Ann Rabe
> Schiff Hardin LLP
> 6600 Sears Tower
> Chicago, Illinois 60606
> mlahey@schiffhardin.com
> lrabe@schiffhardin.com

via the Court's electronic filing system.

/s/    Gia F. Colunga