**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TARAS LYSSENKO, ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C 6678 |
| ) | |
| v. ) | Judge Robert W. Gettleman |
| ) | |
| INTERNATIONAL TITANIUM ) | Magistrate Judge Martin C. |
| POWDER, LLC and STANLEY BORYS, ) | Ashman |
| ) | |
| Defendants. ) | |

**DEFENDANT INTERNATIONAL TITANIUM POWDER, L.L.C.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant International Titanium Powder, L.L.C. ("ITP"),[1] through its attorneys, submits the following reply brief in support of its motion to dismiss counts II, III, IV, and VI of Plaintiff's Complaint.[2]

**INTRODUCTION**

Plaintiff Taras Lyssenko's ("Lyssenko") Complaint alleges a breach of an oral contract which allegedly governed his employment relationship with ITP. Indeed, this alleged oral contract lies at the very heart of Plaintiff's Complaint – Plaintiff references an agreement with ITP in the second sentence of his Complaint, and 20 times thereafter. However, Plaintiff has also tacked four additional claims on to his breach of contract action. These other claims are ill-fitting additions that impermissibly seek to expand the scope and application of unjust

---

[1] Defendant Stanley Borys has filed a motion to dismiss Counts V and VII of Plaintiff's Complaint. Counts V and VII against Defendant Borys are identical to Counts IV and VI against ITP, and therefore Defendant Borys incorporates by reference the arguments related to Counts IV and VI herein.

[2] Plaintiff's Complaint is referenced herein as "Compl." Plaintiff's response brief in opposition to Defendant's motion to dismiss is referenced herein as "(Pl.'s br. at ___)" and Defendant's opening brief in support is referenced herein as "(Def.'s br. at ___)."

enrichment, defamation *per se*, retaliatory discharge, and the Uniform Deceptive Trade Practices Act ("UDTPA"). For example, Plaintiff cannot point to a single case of unjust enrichment that is based on a contractual relationship between the parties, nor can he point to a single case of retaliatory discharge based on a public policy of "public bidding." Further, not only does Plaintiff rely on a single statement to support both his defamation and UDTPA claims, but the comment that Plaintiff "burned bridges" within the "government" supports neither claim. Such a vague comment is not objectively verifiable and is therefore insufficient to support Plaintiff's defamation claim, and Plaintiff has not pointed to a single case under the Uniform Deceptive Trade Practices Act where a former employee was allowed to proceed against an employer based on a statement of the reason for discharge (the "burned bridges"). These four additional claims (unjust enrichment, defamation *per se,* retaliatory discharge and the UDTPA) are expansions of or misapplications of existing law, and have no place in Plaintiff's breach of contract action. These claims should be dismissed, as is detailed below.

A.    **Plaintiff's Unjust Enrichment Claim is Barred Because it Includes an Express Contract and Because Plaintiff Received Compensation for His Services**

Plaintiff does not dispute that an express contract governing the actions at issue bars a claim for unjust enrichment. The premise of Plaintiff's response is that he should be allowed to plead breach of contract and unjust enrichment theories in the alternative. (Pl.'s br. at 4-5.) Numerous courts in this district have held that it is inappropriate to plead unjust enrichment in the alternative where, as is the case here, a contract is at the heart of a plaintiff's complaint. (Def.'s br. at 4.) However, this Court need not decide that issue because Plaintiff has not plead unjust enrichment in the alternative. Plaintiff's unjust enrichment count explicitly discusses and relies upon the alleged agreement between the parties. As a result, his unjust enrichment claim is barred. Moreover, Plaintiff's acknowledgement that he received compensation for his services

-2-

also precludes his unjust enrichment claim.

Plaintiff's arguments regarding alternative pleading are inapposite, because he has not plead the existence of a contract on one hand or unjust enrichment on the other. To the contrary, Plaintiff's explicit pleadings *within his unjust enrichment count* reference an agreement between the parties. Under his unjust enrichment count, in paragraphs 54 and 55, Plaintiff states that:

> ITP terminated its agreement with Lyssenko in order to retain the benefit of [his] efforts without having to pay full recompense to Lyssenko. Because of this, it would be inequitable for ITP to accept and retain these benefits without providing full payment to Lyssenko.

(Compl. ¶¶ 54, 55.) In this way, Plaintiff's unjust enrichment count is actually based on ITP's alleged termination of his at-will employment agreement,[3] and the inequity of ITP retaining the benefits under that agreement without providing full payment to Lyssenko – essentially that ITP ended a contract, and that it would be unjust for ITP to retain the contract's benefits. This type of unjust enrichment claim, which is based on the parties' contractual relationship, must be dismissed. *See Janino Holding, B. V. v. Continental Bank,* 859 F.Supp. 316, 322, n.4 (N.D. Ill. 1994) (in denying alternative pleading, the court dismissed plaintiff's claim that contractual benefits amounted to unjust enrichment).

None of Plaintiff's cited cases allow an unjust enrichment claim to proceed while explicitly referencing and relying on an agreement within that count.[4] Despite Plaintiff's alternate pleading argument, such a claim for unjust enrichment is improper:

> [H]ere plaintiffs have alleged a contractual agreement between the parties. They then incorporated the existence of that contractual agreement into their unjust

---

[3] Plaintiff alleges that his Agreement with ITP was "at-will." (Compl. ¶ 12.)

[4] Plaintiff's citation to *Gershengorin v. Vienna Beef, Ltd.*, No. 06 C 6820, 2007 WL 2840476, at *5 (N.D. Ill. Sept. 28, 2007) is inapposite, as are all of the cases Plaintiff cites in his footnote 1, because none of those cases contain an unjust enrichment count that specifically refers to or relies upon the existence of an agreement.

enrichment claim. While plaintiffs are entitled to plead alternative theories under Rule 8(e)(2), it is well-settled that plaintiff's unjust enrichment claim must not include allegations of the existence of a specific contract.

*Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F.Supp.2d 702, 713 (N.D. Ill. 2007) (citing cases). *See also Watts v. Advance Transformer Co.*, 02 C 4603, 2002 WL 31356449, at *4 (N.D. Ill. Oct. 18, 2002).[5] Like the plaintiffs in *Bucciarelli-Tieger*, Plaintiff's unjust enrichment allegations are merely the injuries it allegedly suffered from ITP's breach of contract.

In addition, Plaintiff's allegation that he received compensation for his services precludes his unjust enrichment claim. As stated above, Plaintiff argues that he be allowed to plead unjust enrichment in the alternative to a breach of contract action. (Pl.'s br. at 4-5.) The necessary implication of this approach, if it were permissible (which it is not, based on Plaintiff's unjust enrichment pleadings), is that the compensation Plaintiff received was not pursuant to any contract. Therefore, Plaintiff alleges the receipt of benefits (a salary of $9,000 per month plus benefits)[6] for his services that were otherwise not required, precluding his unjust enrichment claim. Indeed, Plaintiff must show:

> that valuable services or materials were furnished by the plaintiff, received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit *without paying*. . . . Notably, even when a person has received a benefit from another, he is liable for payment *only* if the circumstances of its receipt or retention are such that . . . it is unjust for him to retain it.

---

[5] Plaintiff, like the plaintiff in *Bucciarelli-Tieger*, here does not allege that he continued to provide services to ITP after the termination of the agreement, or any other facts that would differentiate his breach of contract claim from his unjust enrichment claim.

[6] Plaintiff alleges a modified agreement whereby ITP would pay Plaintiff "installment payments of a monthly salary of $9,000, health insurance, and FICA" while maintaining its obligation to pay "Lyssenko an amount equal to five percent of all government funding." (Compl. ¶ 22.) Plaintiff further acknowledges that "ITP provided a portion of the five percent owed to Lyssenko during the course of his employment through the installment payments of the monthly salary, health insurance, and FICA. . . ." (Compl. ¶ 46.)

*Hayes Mech., Inc. v. First Indus., LP*, 351 Ill.App.3d 1, 812 N.E.2d 419, 426 (Ill.App.Ct. 2004) (emphasis added).  *See also Roti v. Roti*, 364 Ill.App.3d 191, 845 N.E.2d 892, 901 (Ill.App.Ct. 2006) (plaintiff's receipt of $400,000 over five year employment relationship precluded *quantum meruit* claim in absence of sufficient allegations of unreasonableness of compensation).

Plaintiff's proffered citations, such as Plaintiff's citation to this Court's decision in *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F.Supp.2d 817, 827 (N.D.Ill. 1998) (Gettleman, J.), are inapposite.[7]  In *Dames*, plaintiff's employees went to work for a direct competitor and took accounts with them.  The plaintiff, who received no compensation for its services or loss, sued the competitor for unjust enrichment.  Here, however, Plaintiff acknowledges receipt of a salary of over $100,000 per year plus benefits in exchange for the same services that allegedly form the basis of his unjust enrichment claim.  This compensation eviscerates any argument that ITP has been unjustly enriched.  Moreover, similar to the plaintiff in *Roti*, Plaintiff has not alleged that this compensation was less than the reasonable value of his services.  For the foregoing reasons, Plaintiff's unjust enrichment claim must be denied.

**B.    Plaintiff Has Not Identified Any Public Policy, Much Less a Clear Mandate, Sufficient to Create an Expansion of the Retaliatory Discharge Doctrine**

As one of Plaintiff's cited cases notes, "Illinois courts narrowly construe the retaliatory discharge tort and restrict its expansion."  *Rojo v. Mobile Mgmt Co.*, No. 95 C 3449, 1995 WL 549084, at *2-3 (N.D. Ill. Sept. 8, 1995).  The *Rojo* court went on to quote the Seventh Circuit, which concluded that "'many actions that resemble whistle-blowing do not support a claim for retaliatory discharge.  Only where the court recognized that an employer could effectively

---

[7] Plaintiff cites *Dames* in asserting that "as this Court expressly stated, the plaintiff has a claim for unjust enrichment if he alleges the defendant's unjust retention of *any benefit* to his detriment." (Pl.'s br. at 4.) (emphasis in original).  As is detailed above, the *Dames* decision was based on a very different set of facts and is not instructive here.

frustrate a significant public policy . . . , a public policy that goes to the heart of a citizen's social rights, duties, and responsibilities,'" has a claim of retaliatory discharge been allowed. *Id.* (quoting *Long v. Commercial Carriers, Inc.*, 57 F.3d 592, 595 (7th Cir. 1995)). It is against this backdrop that Plaintiff seeks to expand the scope of the retaliatory discharge doctrine in Illinois. Plaintiff's claim of retaliatory discharge must be dismissed for two reasons: (1) he has failed to allege a public policy that was violated by his discharge, and – even if Plaintiff's "public bidding" argument did actually refer to an applicable public policy, (2) he cannot show that such a "public bidding" public policy supports a cause of action for retaliatory discharge.

First, Plaintiff has not alleged a public policy that ITP violated when it discharged him. Plaintiff argues in response that Illinois public policy favors the use of a public bidding system. (Pl.'s br. at 6.) Unable to cite to a statute or regulation on point, Plaintiff cites to *Court St. Steak House, Inc. v. County of Tazewell,* 163 Ill.2d 159, 168, 643 N.E.2d 781, 784 (1994). However, Plaintiff's reliance on *Court St.* for this "public policy" is misplaced. Plaintiff states that this case stands for the general public policy favoring public bidding, but *Court St.* involved a governmental body (the County of Tazewell) that was subject to an Illinois competitive bidding statute. *Id*. ITP is a private entity, and Plaintiff cannot (and has not) argue or plead that ITP is subject to that statute. Indeed, Plaintiff provides no basis to conclude that Illinois has a public policy requiring private companies to engage in a public bidding process when hiring subcontractors – regardless of whether they receive money from the government.[8]

---

[8] Plaintiff claims, in conclusory fashion, that "ITP hardly can claim . . . that there is no violation of public policy by firing someone for questioning why it neglected to use the public bidding system and instead awarded a job to a friend who charged more than market value." (Pl.'s br. at 6.) Despite such rhetoric, Plaintiff has not and indeed cannot point to anything that indicates the existence of such a public policy applicable to ITP, much less a public policy that justifies an expansion of retaliatory discharge.

Moreover, even if there was a general "public bidding" public policy, there is no indication that such a policy would support a cause of action for retaliatory discharge. To be sufficient to support a cause of action for retaliatory discharge, the public policy must be "clearly mandated." *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 813 (7th Cir. 2003). For example, in *Fowler v. Great Amer. Ins. Cos.*, 653 F.Supp. 692, 696-97 (N.D. Ill. 1987), while the court found that the Illinois Insurance Code was enacted pursuant to a public policy (a policy that the public's interest was furthered by appropriate insurance regulation), it concluded that this public policy did not "relate to the core of the citizenry's rights, duties and responsibilities" and therefore did not provide a clear mandate sufficient to justify an expansion of the retaliatory discharge doctrine. *Id*. In so doing, the court noted that public policies associated with social and economic regulation are less likely to be sufficient to support a cause of action for retaliatory discharge. *Id*.

Here, even assuming a public policy exists regarding a public bidding system for private entities, Plaintiff has provided no basis to conclude there is a 'clear mandate' to create another exception to the employment at will doctrine. Notably, Plaintiff has failed – in both the Complaint and in his response brief – to identify any law that ITP even arguably might have violated. This is in stark contrast to the cases cited by Plaintiff, which involved unlawful activity and obvious public policies. (Pl.'s br. at 6.)

Similarly missing the mark is Plaintiff's lengthy discussion of the *recognized* exception to the at-will doctrine for discharges in retaliation for raising concerns about the truthful disclosures of financial information. (Pl.'s br. at 7-8.) While supported by numerous citations, Plaintiff's discussion on this point is entirely irrelevant – there is not a single allegation in the

case at hand that Plaintiff was fired for raising concerns about any untruthful assertion in ITP's financial statements or disclosures. (Compl. ¶ 65.)

Plaintiff's reliance on inapposite public policies and legal holdings does not create a basis for an expansion of the tort of retaliatory discharge. For the reasons stated above, Plaintiff's retaliatory discharge claim must be dismissed.

**C.     Plaintiff's Defamation *Per Se* Claim Must Be Dismissed Because the Statement at Issue is Not Objectively Verifiable and Not Susceptible to a Precise Meaning**

To be defamatory *per se*, the words used must be "so obviously and materially harmful" to the plaintiff that injury to his reputation may be presumed. *Owen v. Carr*, 113 Ill.2d 273, 497 N.E.2d 1145, 1147 (Ill. 1986); *Schivarelli v. CBS, Inc.*, 333 Ill.App.3d 755, 776 N.E.2d 693, 697 (Ill.App.Ct. 2002). Here, Plaintiff relies on an alleged statement that Plaintiff "burned bridges" within the "government" as an explanation for why he was discharged from ITP. This statement is not is not defamatory *per se*, as it is not sufficient to lead to a presumption of injury. (*See* Def.'s br. at 10, n.7.) Moreover, Plaintiff's alleged statement is non-actionable opinion as it is not objectively verifiable and has no precise meaning.[9] As a result, Plaintiff's claim of defamation should be dismissed.

In countering ITP's arguments that Plaintiff's "burned bridges" allegation is not actionable defamation, Plaintiff repeatedly asserts that the defamation inquiry must take into account the context in which the statements were allegedly made. (Pl.'s br. at 9, 11.) While

---

[9] Plaintiff takes issue with Defendant's for "conveniently omitting two of four steps in analyzing whether a statement constitutes actionable defamation." (Pl.'s br. at 9, n.3.) Recent case law suggests three factors – (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is objectively verifiable as true or false, and (3) whether the statement's literary or social context signals that it has factual content." *Rose v. Hollinger Int'l, Inc.*, 375 Ill.App.3d 900, 874 N.E.2d 202, 206 (Ill.App.Ct. 2007). Regardless, the emphasis of the inquiry is whether the statement is capable of objective verification. *Id*.

courts do evaluate the totality of the circumstances in each case, "the emphasis is on whether the statement is capable of objective verification." *Rose v. Hollinger Int'l, Inc.*, 375 Ill.App.3d 900, 874 N.E.2d 202, 206 (Ill.App.Ct. 2007) (*citing cases*).

Simply stated, the alleged remark that Plaintiff "burned bridges" within the government is not verifiable. While Plaintiff argues that the jury can determine whether ITP terminated Lyssenko's employment because he burned bridges within the government, (Pl.'s br. at 11), courts have rejected just such an argument in similar situations. For example, the court in *Hopewell* analyzed a statement that the plaintiff was "terminated because of incompetence." *Hopewell v. Vitullo*, 299 Ill.App.3d 513, 701 N.E.2d 99, 104 (Ill.App.Ct. 1998). The court found that the veracity of the statement could not be verified because the statement was so ambiguous and indefinite that any number of possible facts might support the conclusion that Hopewell was "incompetent." *Hopewell*, 701 N.E.2d at 104. Here too, the statement that Lyssenko "burned bridges" is so ambiguous and indefinite that an innumerable number of facts could support the conclusion that Plaintiff "burned bridges" within the government.[10]

In *Doherty v. Kahn*, 289 Ill.App.3d 544, 682 N.E.2d 163, 172 (Ill.App.Ct. 1997), *abrogated on other grounds by, Byung Moo Sho v. Target Mktg. Sys., Inc.*, 353 Ill.App.3d. 126, 817 N.E.2d 1105 (Ill.App.Ct. 2004), the court similarly found an employer's statements about a former employee's discharge to be unverifiable. Defendant's alleged statements to potential customers that plaintiff was terminated because he was "incompetent," "lazy," "dishonest," "cannot manage a business," and/or "lacks the ability to perform landscaping services" were not

---

[10] In Plaintiff's efforts to provide verifiability through context, he makes statements that go well beyond the allegations of his Complaint. For example, Plaintiff asserts that "[b]ecause Lyssenko was no longer working for ITP, there was no business reason for discussing Lyssenko's work with the OSD." (Pl.'s br. at 11.) This statement of "context" is not supported by any allegation in the Complaint.

actionable because there were no specific facts at the root of the statements capable of being objectively verified as true or false. *Doherty,* 682 N.E.2d at 168, 170, 172 (Ill.App.Ct. 1997) (*discussed by*, *Rose*, 874 N.E.2d at 207). So too, here, the alleged statements provide no specific facts by which they can be verified. The statements make no mention of what Plaintiff may have done to "burn bridges", nor was there any detail provided as to which entities or individuals within the "government" Plaintiff may have burned his bridges.[11] Indeed, the "[t]he vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." *Wynne v. Loyola University of Chicago*, 318 Ill.App.3d 443, 741 N.E.2d 669, 676 (Ill.App.Ct. 2000) (*quoted with approval by Rose*, 874 N.E.2d at 207). *See also Schivarelli v. CBS, Inc.*, 333 Ill.App.3d 755, 776 N.E.2d 693, 698-700 (Ill.App.Ct. 2002) (reporter's statement that "the evidence seems to indicate that you're cheating the city" was not verifiable because "reporter did not explain the evidence," "state why she thought [the plaintiff] was cheating the city, or even [explain] what she meant by cheating.").

Moreover, Plaintiff's allegation is not actionable because it does not have a precise understanding. While "burned bridges" may be a figure of speech – as Plaintiff suggests – this does not provide it with a precise meaning. Quite the opposite, the scope of behavior that could result in "burned bridges" is so expansive that it prevents a listener from gaining a precise understanding of events at issue. As the Court explained in *Hopewell:*

---

[11] This is in contrast to one of Plaintiff's cited cases, *Kumaran v. Brotman*, 247 Ill.App.3d 216, 225, 617 N.E.2d 191, 198 (Ill.App.Ct. 1993), where Plaintiff points to the actionable phrase "working a scam" made in an article. (Pl.'s br. at 11.) However, there the court, in finding that the statement was verifiable, relied on other statements within the same article that provided details about the "scam," such as the filing of frequent, unwarranted lawsuits to procure pecuniary settlements.

> Regardless of the fact that 'incompetent' is an easily understood term, its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning. There are numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's.

*Hopewell,* 701 N.E.2d at 104.  The broad scope of actions that may constitute "burning one's bridges" renders that figure of speech lacking the necessary detail to have a precise meaning. Moreover, as with the term "incompetent", people may disagree whether specific conduct rises to the level of "burning bridges."  For example, one person may view an employee's resignation without notice as "burning bridges" while another may view it simply as ending a business relationship.

Plaintiff further argues that, through the context of the statement, it is apparent that Mr. Borys meant "burned bridges" in a "negative sense" to explain why he was terminated. (Pl.'s br. at 11.)  However, the argument that by "burned bridges," Mr. Borys meant something bad does not create actionable defamation.  For example, in *Dubinsky v. United Airlines Master Executive Council*, 303 Ill.App.3d 317, 708 N.E. 441, 451 (Ill.App.Ct. 1991), the Court found that the statement that plaintiff was a "crook" not actionable because it lacked sufficient factual detail or context.  The court stated that "[o]ne cannot rely on an assumption that those who heard the statement were completely apprised of all the developments in the ESOP controversy so as to create a definitive factual context for the use of the word 'crook.'"  *Id.*  Here too, there is no allegation or argument that the alleged recipient of the comment had any understanding or knowledge of Plaintiff's actions within the "government" that would have created a factual context for the use of the phrase "burned bridges."  *See also Wynne*, 741 N.E.2d at 676.

The principles discussed above were recently and carefully analyzed by an Illinois appellate court presented with a defamation *per se* claim very similar to the one at hand.  *Rose v.*

-11-

*Hollinger International, Inc.*, 375 Ill.App.3d 900, 874 N.E.2d 202 (Ill.App.Ct. 2007). In fact, the *Rose* court discussed every single case cited to and discussed by Plaintiff in the defamation section of his response brief. (Pl.'s br. at 9-11.) The *Rose* court analyzed a statement by an employer – that a former employee wrought "damage" to the company's "finances, to our reputation, to our business relationships, to our morale, to the quality of our editorial product." *Rose*, 874 N.E.2d at 204. Although the plaintiff argued that the statement was made "with the intent to injure [him] personally and to interfere with [his] efforts to obtain employment following his termination", the court found that the statement was not verifiable, did not have a precise core of meaning, and was therefore not actionable defamation. *Id*.

In finding that the statement did not have a "precise core of meaning," the court explained that 'finances,' defined as a company's "pecuniary affairs or resources" was a "broad term, an outer shape without an inner core. The reasonable reader cannot know which pecuniary affairs or resources are being referred to." *Id.* at 210. In finding that the statement was not verifiable, the court noted the broad form of the accusation and questioned how a reasonable person could go about proving or disproving the assertion.

As discussed above, this reasoning applies equally to Plaintiff's alleged "burned bridges" comment. Based on the foregoing, Plaintiff's claim of defamation *per se* should be dismissed.

D.  **Plaintiff's Allegations Under the Uniform Deceptive Trade Practice Act Must be Dismissed Because it is Inapplicable and Because there is No Likelihood of Future Harm**

As noted in ITP's brief in support of its motion to dismiss, the Uniform Deceptive Trade Practices Act ("UDTPA") is intended to cover unfair trade practices, not statements by employers about the reason for a former employee's discharge. (Def.'s br. at 12-13.) Plaintiff argues that numerous cases involve disputes between employers and former employees that are

-12-

governed by the UDTPA. However, none of Plaintiff's cases allow a UDTPA action to proceed in a situation involving a comment made by a employer about a former employee.[12]

Here, Plaintiff's alleged statement that Plaintiff was discharged because he "burned bridges" within the government was not a form of commercial disparagement – such as a direct attack on the quality of a business's goods or services. Instead, the alleged statement was, according to the Complaint, an explanation for why Plaintiff was discharged. As stated by the court in *Global Relief Foundation v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *13 (N.D. Ill. Sept. 11, 2002), "Statements attacking the plaintiff itself or its conduct, as opposed to the quality of its goods or services, may give rise to a defamation claim, but cannot support a commercial disparagement claim." The plaintiff in *Global Relief Foundation* was a charitable foundation, and similar to the Plaintiff here, argued that the defendants' statements "impugn[ed] the quality of GRF's service as a charity or outlet for charitable donations. Thus, according to GRF, donors are likely to take their business to other outlets." *Id.* at *13. The Court rejected this argument (noting that Illinois courts had done likewise) and dismissed plaintiff's UDTPA claims, stating:

> [I]n almost every case of defamation of a business or a businessman it could be alleged that the defamation caused third parties to refrain from dealing with the plaintiff, but that reasoning improperly blurs the distinction between defamation and commercial disparagement.

---

[12] *See In re Draiman*, No. 05 B 54315, 2006 WL 1876983, at *6 (Bankr. N.D. Ill. June 22, 2006) (where UDTPA defendant set up a competing business that misled or confused consumers); *Francorp, Inc. v. Siebert*, 211 F.Supp.2d 1051, 1053-54 (N.D. Ill. 2002) (same); *Unichem Corp. v. Gurtler*, 148 Ill.App.3d 284, 287-92, 498 N.E.2d 724, 726-29 (Ill.App.Ct. 1986) (same). *See also Crinkley v. Dow Jones and Co.*, 67 Ill.App.3d 869, 877, 385 N.E.2d 714, 720 (Ill.App.Ct. 1978) (dismissing UDTPA claim because defendant did not disparage the quality of plaintiff's goods or services).

*Id.* So too, here, Plaintiff's efforts to convert Mr. Borys' alleged statement that Plaintiff was discharged because he "burned bridges" within the government into commercial disparagement should be denied, and his UDTPA claim should be dismissed.

In addition, Plaintiff's UDTPA claim fails because his allegations do not establish a likelihood of future harm. "It is hornbook law that a plaintiff seeking injunctive relief must allege facts from which the threat of future [harm] may reasonably be assumed." *Liqui-Green Lawn Care of DuPage v. S.C. Johnson & Son, Inc.*, No. 91 C 1978, 1992 WL 107294, *5 (N.D. Ill. May 14, 1992). Plaintiff has failed to make such allegations, relying instead on vague allegations that an unknown number of disparaging statements were made by unknown individuals[13] to unknown government entities at unknown times. Such vague allegations cannot constitute sufficient facts from which a threat of future harm "may reasonably be assumed."

Specifically, in an attempt to support his claim for injunctive relief, Plaintiff points to his conclusory allegation that "Borys and others at ITP have been defaming and disparaging Lyssenko's good name throughout Capital Hill, the Department of Defense, and elsewhere." (Compl. ¶ 40.) Plaintiff's conclusory pleading about statements allegedly made by Mr. Borys "and others" does not sufficiently establish the likelihood of future disparagements. *See Allcare, Inc. v. Bork*, 176 Ill.App.3d 993, 531 N.E.2d 1033, 1038-39 (Ill.App.Ct. 1988) (judgment on plaintiff's UDTPA claim granted because plaintiff's allegations did not assert, "beyond the two allegedly defamatory statements, . . . *a long standing and persistent pattern* by defendants of . . . disparaging its products and services.") (emphasis added). *See also Comtel Technologies, Inc. v. Paul H. Schwendener, Inc.*, No. 04 C 3879, 2005 WL 433327, at *10 (N.D. Ill. Feb. 22, 2005)

---

[13] Plaintiff specifically identifies only Mr. Borys in his allegations regarding disparaging statements. (Compl. ¶¶ 40, 41, 85, 90.)

(the Court found no indication that a misrepresentation would occur in the future despite the complaint's assertion of past misrepresentations regarding plaintiff's services); *Liqui-Green Lawn Care*, 1992 WL 107294 at *5 (denying injunctive relief where plaintiff provided "neither evidence nor argument" supporting a likelihood of future harm).

For the foregoing reasons, in addition to the fact that the allegedly disparaging statement is not factual (as described in more detail herein on pages 9-12, and in ITP's brief in support on pages 8-11 and 13), Plaintiff's UDTPA claim should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, in addition to its arguments in its memorandum in support of its motion to dismiss, International Titanium Powder, L.L.C. respectfully requests that this Court dismiss Counts II, III, IV, and VI of Plaintiff's Complaint with prejudice, and grant such other relief as the Court may consider just.

Dated: March 11, 2008    Respectfully submitted,

/s/    Matthew D. Lahey

Matthew D. Lahey
Lee Ann Rabe
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606
(312) 258-5500
(312) 258-5600
*Attorneys for Defendant,*
*International Titanium Powder, L.L.C.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on March 11, 2008, he electronically filed the foregoing Defendant's Motion to Dismiss and Memorandum in Support with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to the following:

>Anthony J. Carballo
>Gia F. Colunga
>Freeborn & Peters LLP
>311 South Wacker Drive
>Suite 3000
>Chicago, Illinois 60606-6677
>(312) 360-6000
>tcarballo@freebornpeters.com
>gcolunga@freebornpeters.com

/s/    Matthew D. Lahey

CH1\5496633.4