IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARAS LYSSENKO,              ) | |
|                              ) | |
| Plaintiff,                   ) | |
|                              ) | |
| v.                           ) | Case No. 07 C 6678 |
|                              ) | |
| INTERNATIONAL TITANIUM       ) | Judge Robert W. Gettleman |
| POWDER, LLC and STANLEY      ) | |
| BORYS,                       ) | Magistrate Judge Martin C. |
|                              ) | Ashman |
| Defendants.                  ) | |

DEFENDANT INTERNATIONAL TITANIUM POWDER, L.L.C.'S
AMENDED ANSWER TO COMPLAINT

Defendant International Titanium Powder, L.L.C. ("ITP"), through its attorneys, submits the following Amended Answer to the Complaint of Taras Lyssenko ("Lyssenko"),[1]:

1.  Lyssenko brings this action seeking redress for the substantial monetary and other injuries suffered as a result of the unlawful conduct of ITP and its CEO Borys. Lyssenko entered into an agreement with ITP, pursuant to which Lyssenko was to receive payment in an amount equal to five percent of all government funds obtained for ITP through Lyssenko's government relations and marketing efforts. ITP sought to renege on this agreement and to avoid Lyssenko's inquiries regarding improper conduct at ITP, so it terminated Lyssenko in August of 2007. ITP has since failed to honor the terms of its agreement with Lyssenko, which has caused Lyssenko substantial monetary damages. Moreover, Lyssenko has suffered damages as a direct result of ITP's wrongful retaliatory discharge. Furthermore, Lyssenko is also seeking damages and injunctive relief as a result of the defamatory and disparaging statements made about him by Borys and others at ITP.

---

[1] All claims against ITP except Counts I and IV have been dismissed, and thus ITP answers only the claims appearing in those counts. This Amended Answer is identical to the Answer ITP filed on December 21, 2007, with the exception of the addition of Paragraphs 70 through 76, and Additional Defense No. 3, added herein. ITP's Counterclaim, filed with ITP's Answer, remains unchanged and therefore is not recited herein.

**ANSWER:** ITP objects to Paragraph 1 to the extent that it does not comply with the mandate of Federal Rule of Civil Procedure 8(a) ("Rule 8(a)") to provide a "short and plain statement." ITP admits that Plaintiff purports to be seeking redress of injuries in this action, but otherwise denies the allegations of Paragraph 1.

2.  Plaintiff Lyssenko is a citizen of the State of Michigan and formerly worked for ITP as its Director of Government Relations and Business Development.

**ANSWER:** ITP lacks sufficient information to admit or deny that Plaintiff is a citizen of the state of Michigan. Admitted that after January 2005, Plaintiff's title was as stated.

3.  Defendant ITP is an Illinois limited liability company with its principal place of business located at 20634 W. Gaskin Drive, Lockport, Illinois 60441. ITP includes the following six members: (i) James Kurtenbach, citizen of Nevada, Iowa, (ii) Grant Crowley, citizen of Chicago, Illinois, (iii) Donn Armstrong, citizen of Waukesha, Wisconsin, (iv) Arthur Wong, citizen of Chicago, Illinois, (v) Richard Anderson, citizen of Clarendon Hills, Illinois, and (iv) Defendant Borys, citizen of Elmhurst, Illinois. ITP is in the business of producing low-cost titanium and titanium alloys.

**ANSWER:** Admitted that ITP is a limited liability company organized in Illinois, that ITP's principal place of business is located at 20634 W. Gaskin Drive, Lockport, Illinois 60441, and that ITP is in the business of producing low-cost titanium and titanium alloys. Denied that the listed individuals are the members of ITP.

4.  Defendant Borys is a citizen of Illinois, residing at 372 N. Walnut Street, Elmhurst, Illinois 60126. Borys is the CEO of ITP.

**ANSWER:** Admitted. ITP further states that Borys is also Chairman of ITP.

5.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** ITP lacks sufficient information to admit or deny the allegations of Paragraph 5.

6.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(a).

**ANSWER:** Admitted.

7.    Lyssenko is a former army ranger for the United States military. Since resigning from his post, Lyssenko has continued to serve his country in many ways. For instance, on behalf of the National Museum of Naval Aviation, Lyssenko retrieved dozens of WWII airplanes from the depths of Lake Michigan, which were, downed during training sessions. Lyssenko also spear-headed the congressional bill authorizing payment for such retrievals. Additionally, Lyssenko played a role in, several Governmental Accountability Office ("GAO") investigations to rid the government of corruption. These efforts and others lead Lyssenko to his career in government relations. Lyssenko's unique background and experiences have enabled him to work effectively in the government relations and business development arenas.

**ANSWER:** ITP objects to Paragraph 7 to the extent that it does not comply with the mandate of Rule 8(a) to provide a "short and plain statement." ITP lacks sufficient information to admit or deny the allegations of Paragraph 7.

8.    In 2002, ITP approached Lyssenko with a new cause to support. In particular, ITP's Chairman of the Board, Grant Crowley ("Crowley"), and ITP's CFO, Arthur Wong ("Wong"), informed Lyssenko about ITP's development of a process to produce low-cost titanium and titanium alloys. Titanium is a far more superior metal than both steel and aluminum for military purposes, but had been too costly for the government to employ on a large scale. ITP sought to change the cost barrier through its technology, but needed funding to complete its research.

**ANSWER:** Denied that ITP approached Plaintiff in 2002. Admitted that in 2002 Arthur Wong was ITP's CFO and John G. Crowley was ITP's Chairman of the Board. Admitted that ITP was developing a process to produce low-cost titanium and titanium alloys. Admitted that titanium is a superior metal for some military purposes, and that ITP sought funding to scale-up its production efforts. ITP denies the remaining allegations of Paragraph 8.

9. Because of Lyssenko's background and past government relations work, ITP asked Lyssenko to assist it in obtaining government funding. ITP sought any and all government funding, but ultimately hoped that the government would pass a Defense Production Act Title III action, through which the government decides that market forces are not developing a necessary technology quick enough, so it provides funds for the technology's development and in return may buy the goods produced by that technology at a lower cost.

**ANSWER:** Admitted that ITP sought government funding, and that ITP eventually employed Plaintiff to assist in those efforts. Denied that ITP sought "any and all" funding. ITP denies the remaining allegations of Paragraph 9.

10. In return for Lyssenko's government relations and marketing efforts, ITP offered to pay Lyssenko compensation in an amount equal to five percent of all government funding obtained by ITF through Lyssenko's efforts.

**ANSWER:** Denied.

11. Because Lyssenko agreed that the production of low-cost titanium was a worthy cause and the terms of the agreement were fair, Lyssenko accepted ITP's offer.

**ANSWER:** ITP lacks sufficient knowledge to admit or deny the allegations of Paragraph 11. ITP denies that the terms of the agreement between Plaintiff and ITP were as stated in Paragraph 10.

12. Consequently, ITP and Lyssenko entered into an oral agreement for nonexclusive at-will employment for an indefinite duration. The terms of this agreement required Lyssenko to lobby for government funding for ITP and required ITP to pay Lyssenko compensation in an amount equal to five percent of all government funding obtained by ITP through Lyssenko's efforts.

**ANSWER:** Admitted that Plaintiff was an employee of ITP, and that his duties included lobbying on behalf of ITP. ITP denies the remaining allegations of Paragraph 12.

13. Lyssenko began his government relations efforts immediately, contacting those members of Congress and various governmental entities that were likely to support low-cost titanium.

**ANSWER:** ITP admits that during the course of his employment, Plaintiff contacted members of Congress and various governmental entities. ITP objects to the extent that "immediately" implies any time before early 2004.

14.   For instance, Lyssenko contacted the offices of Senators Richard Durbin and Peter Fitzgerald and Representatives Judy Biggert, Roscoe Bartlett, Jerry Weller, Bill Young, Jerry Lewis, Duncan Hunter, Don Manzullo and others.  Lyssenko also worked with many governmental entities, such as the Defense Advanced Research Projects Agency ("DARPA"), Advanced Technology Program of the National Institute of Standards and Technology ("APT NIST"), the Armament Research Development and Engineering Center ("ARDEC"), the Oak Ridge National Laboratory ("Oak Ridge"), and the Office of the Secretary of Defense ("OSD").

**ANSWER:** Admitted that Plaintiff, in the course of his employment with ITP, contacted Senator Richard Durbin, Representatives Judy Biggert, Roscoe Bartlett, and Don Manzullo, the Defense Advanced Research Projects, Advanced Technology Program of the National Institute of Standards and Technology, the Armament Research Development and Engineering Center, the Oak Ridge National Laboratory, and the Office of the Secretary of Defense. ITP lacks sufficient information to admit or deny the remaining allegations of Paragraph 14.

15.   Realizing that he could obtain government funding for ITP more easily if ITP's business development flourished, Lyssenko began taking an active role in ITP's business development as well.  He made contacts with titanium consolidators and fabricators and their government partners, such as ADMA Products, Army ManTech Technical Objectives Committee, Webster-Hoff, LMC Press, Ametek, Oak Ridge, and Boeing Company.  These efforts lead to Boeing Company, among others, purchasing ITP's titanium. He also began attending conferences in the titanium industry in order to promote ITP, such as the conferences organized by the International Titanium Association and AeroMat.  Additionally, Lyssenko began hosting and conducting titanium consolidation and fabrication meetings where presentations were made by DARPA, Army, Navy, Air Force, Department of Defense prime contractors, Department of Energy, and fabricators.

**ANSWER:** ITP objects to Paragraph 15 to the extent that it does not comply with the mandate of Rule 8(a) to provide a "short and plain statement." ITP admits that

Plaintiff's assigned work duties included business development efforts, and that Plaintiff attended conferences in the titanium industry. ITP also admits that Boeing Company purchased ITP's titanium, but denies this was a result of Plaintiff's efforts as stated in Paragraph 15. ITP denies the remaining allegations of Paragraph 15.

16. ITP recognized Lyssenko's business development efforts and thus gave him the title of "Director of Government Relations and Business Development."

**ANSWER:** Admitted that after January 2005 Plaintiff's title was as stated during his employment with ITP. ITP denies that Plaintiff was given that title as a result of recognizing his business development efforts.

17. From 2002 to February 2004, Lyssenko took these actions without receiving any compensation from ITP because, per the Lyssenko-ITP agreement, ITP had no obligation to pay Lyssenko until ITP received government funding through Lyssenko's lobbying. Only if and when Lyssenko obtained government funding for ITP did the agreement require ITP to pay Lyssenko an amount equal to five percent of the funds received.

**ANSWER:** Denied.

18. In or around February 2004, Lyssenko's government relations and business development efforts paid off, and ITP received its first government funds: $1,700,000 from Congress.

**ANSWER:** Denied.

19. As a result, Lyssenko sought his agreed to compensation of an amount equal to five percent of the funds received by ITP.

**ANSWER:** Denied.

20. ITP had little available capital at that time, however, and could not afford to provide Lyssenko with the full five percent due.

**ANSWER:** Denied.

21.   ITP and Lyssenko therefore mutually agreed to modify their agreement.

**ANSWER:** Denied.

22.   The terms of this modified agreement still required Lyssenko to perform government relations and marketing for government funding for ITP, and still required ITP to pay Lyssenko compensation in an amount to five percent of all governmental funding obtained. But the modified agreement permitted ITP to pay down the total amount owed to Lyssenko via installment payments of a monthly salary of $9000, health insurance, and FICA while ITP's cash flow remained low. ITP's ultimate obligation to pay Lyssenko an amount equal to five percent of all government funding did not change however.

**ANSWER:** Admit that Plaintiff's duties while he was employed by ITP included seeking government funding on behalf of ITP. Admit that, starting in March 2004, in addition to its FICA taxes related to Plaintiff's employment, ITP paid Plaintiff a monthly salary and, after June 2005, health insurance. ITP denies the remaining allegations of Paragraph 22.

23.   The government funds secured by Lyssenko continued after February 2004.

**ANSWER:** Admitted that ITP received government funding after February 2004. ITP denies the remaining allegations of Paragraph 23.

24.   From 2004 to 2006, Lyssenko obtained funding for ITP through Congress, DARPA, ARDEC, and Homeland Security, totally approximately $6,575,000.

**ANSWER:** Admitted that ITP received some government funding due in part to Plaintiff's efforts. ITP denies that this funding was solely due to Plaintiff's efforts. ITP denies the remaining allegations of Paragraph 24.

25.   Additionally, due to Lyssenko's efforts in 2006, ITP received $3.55 million from Congress in 2007.

**ANSWER:** Admitted that ITP received some government funding in 2007 due in part to Plaintiff's efforts. ITP denies that this funding was solely due to Plaintiff's efforts, and denies that the amount was $3.55 million.

26. Likewise, Lyssenko's government relations efforts in 2006 caused Representative Weller to request funds for ITP in the 2007 defense appropriations bill, with the $968,000 in pretax funds provided by ARDEC or Army RDE Comm.

**ANSWER:** Admitted that Representative Weller requested funds for ITP in the 2007 defense appropriations bill in the amount stated. ITP lacks information sufficient to admit or deny the remaining allegations of Paragraph 26.

27. Lyssenko also secured a $630,000 Illinois Economic Development for a Growing Economy ("EDGE") Grant for ITP in 2007. This EDGE Grant provides ITP with income tax rebates, training funds, and other monetary benefits.

**ANSWER:** Denied.

28. Moreover, Lyssenko got closer to obtaining a Defense Production Act Title III action for ITP. After years of discussing ITP's development with the OSD and Senator Durbin, in 2007, both agreed to seek a Title III action for ITP in Congressional defense appropriations bills. OSD already was working on its budget recommendations for 2009, but informed Lyssenko that it would recommend the Title III in 2009 for $50 million to $150 million. Because Senator Durbin knew that OSD was moving forward with the Title III in 2009, Senator Durbin agreed to request a smaller-scale Title III for $5 million to $10 million in the 2008 defense appropriations bill. Durbin did so, and the 2008 defense appropriations bill requests the President of the United States to approve a $5 million Title III for ITP. The President will review the bill at the beginning of the 2008 year. Once it is approved, ITP will receive the Title III funding.

**ANSWER:** ITP objects to Paragraph 28 to the extent that it does not comply with the mandate of Rule 8(a) to provide a "short and plain statement." Admitted that Senator Durbin requested a $5 million Title III line item for ITP which has been included in the 2008 defense appropriations bill. Denied that Plaintiff sought Title III funding with ITP's knowledge or consent, that any Title III funding will necessarily be approved,

and that any approved Title III funding will necessarily be received by ITP. ITP lacks sufficient information to admit or deny the remaining allegations of Paragraph 28.

29. Throughout the years, Lyssenko also secured government funds that benefited ITP, but ITP was not the direct recipient of said funding.

**ANSWER:** ITP lacks sufficient information to admit or deny the allegations of Paragraph 29.

30. In total, Lyssenko has secured approximately $16.75 million in government funds directly for ITP, secured additional funds that benefited ITP indirectly, and as a result of Lyssenko's efforts ITP should receive further direct funding in 2009 with the OSD's planned Title III action for $50 million to $150 million.

**ANSWER:** Denied that Plaintiff has secured approximately $16.75 million in government funds for ITP. ITP further denies that "as a result of Lyssenko's efforts ITP should receive further direct funding in 2009 with the OSD's planned Title III action for $50 million to $150 million." ITP lacks sufficient information to admit or deny the remaining allegations of Paragraph 30.

31. Despite Lyssenko's hard work, dedication, and successful efforts on behalf of ITP, Borys and others at ITP began criticizing him and seeking ways to avoid the five-percent agreement.

**ANSWER:** Denied.

32. For instance, in 2003, Lyssenko overheard ITP Board Chairman Crowley tell lobbyist Mark Ruggie on the telephone that after Lyssenko establishes the foundation for the Title III action, ITP will fire Lyssenko and permit Ruggie to complete the Title III action. Lyssenko overheard this telephone conversation while standing outside of Crowley's office.

**ANSWER:** Denied.

33. Likewise, James Kurkenbach ("Kurkenbach"), ITP's venture capitalist manager, expressed frustration when discussing the five-percent agreement with Lyssenko in or about May 2007.

**ANSWER:** Denied.

34. In June and July of 2007, Borys and Crowley both displayed frustration when Lyssenko questioned the legality of ITP's decision to award construction projects to Kurkenbach's friend, who on information and belief charged ten percent more than the market rate, rather than utilizing the public-bidding system.

**ANSWER:** Denied.

35. Because the construction projects were funded in part by the government, Lyssenko questioned whether the public-bidding process, which ITP's engineer had intended to use, was mandatory.

**ANSWER:** Denied.

36. Lyssenko raised the issue with Borys first, but he did nothing. Lyssenko then raised the issue with Crowley, and Crowley also took no action. Instead, both ITP executives dismissed Lyssenko.

**ANSWER:** Denied.

37. On August 3, 2007, ITP terminated the employment of Lyssenko.

**ANSWER:** Admitted.

38. Immediately thereafter, Lyssenko sent a demand to ITP for payment of the remaining amount owed to him equal to five percent of all government funds obtained by ITP as a result of Lyssenko's efforts.

**ANSWER:** Admitted that Plaintiff made a demand for payment of approximately $135,000. ITP denies that Plaintiff was due any such amount.

39. ITP has refused to pay the remaining amount owed to Lyssenko.

**ANSWER:** Denied that Plaintiff is due any amount from ITP.

40. Thereafter, Borys and others at ITP have been defaming and disparaging Lyssenko's good name throughout Capital Hill, the Department of Defense, and elsewhere.

**ANSWER:** Denied.

41. In September, 2007, Borys told an OSD representative that Lyssenko was terminated because be has "burned bridges" within the government, thus implying that Lyssenko would do a poor job as a lobbyist or any other job relating to government.

**ANSWER:** Denied.

### Count I: Breach Of Lyssenko-ITP Agreement Against ITP

42. Lyssenko repeats, realleges, and incorporates all allegations contained in paragraphs 1 through 41 as if fully restated.

**ANSWER:** ITP restates and incorporates by reference its responses to Paragraphs 1 through 41 as though fully set forth herein.

43. ITP entered into a valid and enforceable agreement with Lyssenko.

**ANSWER:** Admitted that ITP entered into a valid and enforceable agreement with Plaintiff, but denied that the terms of that agreement were as stated by Plaintiff in this Complaint.

44. Lyssenko has performed his obligations under the Lyssenko-ITP Agreement by lobbying for ITP, promoting ITP's business development, and governmental funding for ITP.

**ANSWER:** Denied.

45. As a requirement of the Lyssenko-ITP Agreement, ITP promised to pay Lyssenko compensation in an amount equal to five percent of all government funding obtained for ITP through Lyssenko's government relations and marketing efforts.

**ANSWER:** Denied.

46. While ITP provided a portion of the five percent owed to Lyssenko during the course of his employment through the installment payments of the monthly salary, health insurance, and FICA, ITP has failed to pay Lyssenko the full amount equal to five percent of all government funding obtained for ITP through Lyssenko's efforts.

**ANSWER:** Admitted that ITP paid Plaintiff a monthly salary, the employer portion of FICA and, after June 2005, health insurance. ITP denies the remaining allegations of Paragraph 46.

47. ITP breached the Lyssenko-ITP Agreement by failing to pay Lyssenko the full amount equal to five percent of all government funding he obtained for ITP.

**ANSWER:** Denied.

48. As a direct and proximate result of ITP's breach, Lyssenko has been damaged.

**ANSWER:** Denied.

### Count IV: Defamation *Per Se* Against ITP

70. Lyssenko repeats, realleges, and incorporates all allegations contained in paragraphs 1 through 41 as if fully restated.

**ANSWER:** ITP restates and incorporates by reference its responses to Paragraphs 1 through 41 as though fully set forth herein.

71. ITP intentionally made false and *per se* defamatory statements about Lyssenko to third parties, including original equipment manufacturers ("OEMs") and government officials.

**ANSWER:** Denied.

72. For example, in September 2007, ITP's agent and CEO Borys told an OSD representative that Lyssenko "burned bridges" within the government and implied that ITP terminated Lyssenko for that reason.

**ANSWER:** Admitted that Borys is ITP's CEO and Chairman. ITP denies the remaining allegations of Paragraph 72.

73. This statement is *per se* defamatory because it suggests that Lyssenko is unable to perform as a lobbyist and lacks integrity as a lobbyist because he "burned bridges" throughout the government.

**ANSWER:** To the extent Paragraph 73 states a legal conclusion, no response is required. ITP denies the remaining allegations of Paragraph 73.

74. This statement also is false and not otherwise privileged.

**ANSWER:** Denied. Answering further, ITP understands "this statement" to refer to the alleged statement set forth in Paragraph 72 above, that Plaintiff "burned bridges" within the government.

75. As a direct and proximate result of the defamatory statements, Lyssenko has been damaged financially and has suffered severe emotional distress, outrage, humiliation, and anxiety, as well as the disruption of his personal life.

**ANSWER:** Denied.

76. Unless ITP is enjoined from continuing to make such false defamatory statements, Lyssenko will continue to suffer immediate, substantial and irreparable harm, including the potential loss of current and prospective clients, loss of goodwill, reduction in his competitive position in the industry, and other economic damages.

**ANSWER:** Denied.

### ADDITIONAL DEFENSES TO COUNTS I AND IV

1. Plaintiff's claim is barred because it fails to state a claim upon which relief can be granted.

2. Plaintiff's claim is barred, in whole or in part, because Plaintiff has failed to comply with the applicable statute of limitations governing his claim.

3. Plaintiff's claim is barred because the alleged statements do not rise to the level of *per se* defamation.

-14-

Dated: May 21, 2008                    Respectfully submitted,


                                       /s/    Matthew D. Lahey

                                       Matthew D. Lahey
                                       Lee Ann Rabe
                                       Schiff Hardin LLP
                                       6600 Sears Tower
                                       Chicago, IL 60606
                                       (312) 258-5500
                                       (312) 258-5600

                                       *Attorneys for Defendant International Titanium Powder, LLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 21, 2008, he electronically filed the foregoing Defendant International Titanium Powder, L.L.C.'s Amended Answer to Complaint with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to the following:

Anthony J. Carballo
Gia F. Colunga
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
(312) 360-6000
tcarballo@freebornpeters.com
gcolunga@freebornpeters.com


/s/____Matthew D. Lahey____

CH2\2494948.2