IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARAS LYSSENKO, ) | |
| ) | |
| Plaintiff, ) | No.  07 C 6678 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| INTERNATIONAL TITANIUM POWDER, LLC, ) | |
| and STANLEY BORYS, ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM OPINION AND ORDER**

Taras Lyssenko has sued his former employer, International Titanium Powder ("ITP") for breach of contract (Count I), unjust enrichment (Count II), retaliatory discharge (Count III), defamation *per se* (Count IV), and violation of the Uniform Deceptive Trade Practices Act (the "UDTPA") (Count VI). Plaintiff has also sued ITP's CEO, Stanley Borys, for defamation *per se* (Count V) and violation of the UDTPA (Count VII). Defendant ITP has moved to dismiss counts II, III, IV, and VI under Fed. R. Civ. P. 12(b)(6), and defendant Borys has moved to dismiss Counts V and VII on the same ground. Borys incorporates by reference ITP's arguments relating to Counts IV and VI, as those counts correspond to the counts against him in his individual capacity.

**FACTS**

The facts alleged in the complaint are taken as true for purposes of the instant motion, Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Plaintiff states that he entered into an oral agreement with ITP in 2002, under which he would seek government funding for ITP projects relating to the development of titanium products. Plaintiff alleges that ITP agreed to pay him 5% of the funds received as a result of his efforts. He further asserts that



from 2002 to 2004, plaintiff contacted members of Congress and representatives of various governmental agencies in pursuit of funding for ITP, and that, in addition, he engaged in business development activities that were outside the scope of his agreement with ITP, but that he believed would benefit his efforts to raise government funds on behalf of ITP. At some point during this period, ITP gave plaintiff the title Director of Government Relations and Business Development.

In or around February 2004, after ITP received funding from the government, the parties modified their agreement. Plaintiff states that the parties' fundamental obligations remained the same under the modified agreement (i.e., plaintiff would continue to seek government funding on ITP's behalf, and ITP was still obligated to compensate plaintiff in an amount of 5% of all government funding he obtained), but that additional provisions were agreed upon. Specifically, plaintiff claims that under the modified agreement, he would receive "installment payments" in the form of a monthly salary of $9000 as a "pay down" of the ultimate 5% of government funds to which he was entitled under the earlier agreement. In addition, the modified agreement provided that plaintiff would receive health insurance and other employee benefits. Plaintiff does not claim that ITP failed to pay the agreed-upon monthly salary or provide benefits during the period from February 2004 through the termination of his employment in August 2007.

The parties' relationship soured. Plaintiff claims that although he was successful in obtaining funding for ITP from a number of government sources, defendant Borys and others at ITP began to "criticize" him and seek to avoid paying him according to the terms of the parties' original agreement. Plaintiff also states that he overheard a conversation in 2003, in which the

Chair of ITP's Board of Directors, Grant Crowley, stated that he planned to fire plaintiff after plaintiff "establishe[d] the foundation" to obtain certain government funding.

Plaintiff was terminated in August of 2007. He claims that his termination was in retaliation for his having questioned, in conversations with defendant Borys and with the Chair of the ITP Board of Directors, the legality of ITP's decision to award construction projects to a friend of ITP's venture capitalist manager without soliciting bids from the public. Finally, plaintiff claims that since his termination, defendant Borys has said to third parties that plaintiff "burned bridges" within the government and insinuated that that was the basis for plaintiff's dismissal.

## DISCUSSION

### Legal Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. See McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must, nevertheless, plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

### Count II - Unjust Enrichment

The court assumes, as it must, that ITP in fact received a benefit as a result of plaintiff's services, and that plaintiff did not receive "full recompense" for those services. Defendants

3

argue that plaintiff's unjust enrichment claim should be dismissed because it cannot coexist with his breach of contract claim. The court agrees. Plaintiff's argument that he is entitled to plead inconsistent counts in the alternative may be true in the abstract, but it is unavailing here because that is not what plaintiff has done. Rather, he has alleged that ITP has been unjustly enriched *as a result* of its alleged failure to fulfill its express contractual terms. Plaintiff's reliance on the breach of contract claim to support his claim of unjust enrichment is fatal to the latter claim. See Bucciarelli-Tieger v. Victory Records, Inc., 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007); Team Impressions, Inc. v. Chromas Technologies Canada, Inc., No. 02 C 5325, 2003 WL 355647, at *4 (N.D. Ill., Feb. 18, 2003). Accordingly, the court need not consider Defendants' additional argument that plaintiff's receipt of compensation for his services precludes his unjust enrichment claim. Count II is dismissed.

Count III - Retaliatory Discharge

Plaintiff claims that his termination constitutes retaliatory discharge under Illinois law because he was fired for voicing plaintiff's concerns about ITP's award of construction projects to a friend of one of the company's officers (who, on information and belief, charges above-market rates), instead of engaging in competitive public bidding. The court assumes these facts to be true.

The tort of retaliatory discharge is a narrowly-construed exception to the general Illinois rule that at-will employees may be fired for any or no reason, see Long v. Commercial Carriers, Inc., 57 F.3d 592, 594 (7th Cir. 1995) (citing Barr v. Kelso-Burnett Co., 106 Ill.2d 520 (1985)). To state a claim, a plaintiff must allege that: (1) he or she has been discharged; (2) the discharge

4

was in retaliation for plaintiff's activities and (3) the discharge violated a clearly mandated Illinois public policy. See Arres v. IMI Cornelius Remcor, Inc., 333 F.3d 812, 813 (7th Cir. 2003). Defendants argue that plaintiff fails to state a claim because he does not establish that his termination involves a clearly mandated Illinois policy. Plaintiff responds that because his dismissal "was based on ITP's failure to comply with the public bidding system," a general public policy favoring public bidding supports his claim.

Plaintiff's claim fails because he does not identify any Illinois public policy--much less a clearly mandated one--that would require ITP to engage in public bidding. Plaintiff's sweeping assertion that "public policy favors the use of the public-bidding system" is insufficient. Since the Illinois Supreme Court first recognized the tort of retaliatory discharge in Kelsay v. Motorola, Inc. 74 Ill.2d 172 (1971), it has emphasized that even the explicit invocation of a statute or constitutional provision is insufficient to show that a significant public policy is at issue. See Barr v. Kelso-Burnett Co., 106 Ill.2d 520 (1985). In evaluating potential claims for retaliatory discharge, courts must not only assess whether the complaint alleges a violation of law, but also examine whether the public policy underlying the law strikes at the heart of a citizen's social rights, duties, and responsibilities or involves the protection of each citizen's health and safety. See Hicks v. Resolution Trust Corp., 970 F.2d 378, 381-82 (7th Cir. 1992) (citing Palmateer v. International Harvester Co., 85 Ill.2d 124, 130 (1981) and Wheeler v. Caterpillar Tractor Co., 108 Ill. 2d 502, 510-512 (1985)). This requires an analysis of "the State's constitution and statutes and, when they are silent…its judicial decisions." Palmateer v. International Harvester Co., 85 Ill.2d 124, 130 (1981).

Plaintiff invokes no constitutional or statutory basis for the general "public bidding" public policy he asserts and cites only to the judicial decision in <u>Court Street Steak House, Inc., v. County of Tazewell</u>, 163 Ill. 2d 159 (1994). His reliance on that case, however, is unavailing. In <u>Court Street</u>, the contracting entity's obligation to engage in public bidding arose not out of a general "public bidding" policy, but because it was subject to a competitive bidding statute. Here, plaintiff does not allege that any competitive bidding statute applies to ITP. While plaintiff need not cite to specific laws, see <u>Sciortino v. Winnebago County Hous. Auth.</u>, No. 94 C 50375, 1996 WL 153687, at *2 (N.D. Ill., April 2, 1996), he must provide some basis to conclude that a clearly mandated public policy of Illinois is implicated by his dismissal. His complaint fails to do so.[1]

Plaintiff also asserts that a public policy regarding truthful disclosure of financial information supports his claim, and he cites a number of cases. But because the complaint does not allege that plaintiff was terminated for raising concerns about ITP's financial disclosures, or assert that ITP failed to make truthful financial disclosures, his argument and authorities are irrelevant. Count III is dismissed.

---

[1]Plaintiff's argument that he "reasonably believed" ITP was required to engage in public bidding based on its government funding is irrelevant. The reasonableness of plaintiff's view of the law might be relevant under different circumstances, such as if were terminated for refusing to engage in conduct that he reasonably, but wrongly, believed to be unlawful. Cf. <u>Arres v. IMI Cornelius Remcor, Inc.</u>, 333 F.3d 812 (7th Cir. 2003) (no claim for retaliatory discharge where plaintiff refused to implement orders she unreasonably believed were unlawful). The relevant question in this case–whether a clearly mandated Illinois public policy is implicated by plaintiff's termination–does not depend on plaintiff's subjective understanding of the law.

Counts IV and V (Defamation *per se*)

Plaintiff alleges that after he was terminated, ITP (through its agent, Borys) told a government representative that plaintiff had "burned bridges" within the government and had been fired for that reason. Plaintiff claims that these amount to *per se* defamation because they suggest an inability to perform his employment duties and because they prejudice him in his profession. Defendants argue that the identified statements are not *per se* defamatory. Defendants further argue that because the statements are too imprecise to be considered "factual," they are protected by the First Amendment.

Illinois courts recognize five categories of statements that amount to *per se* defamation, of which two are allegedly applicable here: (1) statements imputing an inability to perform or want of integrity in the discharge of duties of office or employment, and (2) statements that prejudice a party in his or her profession or trade. See Hopewell v. Vitullo, 299 Ill. App. 3d 513, 517 (1998). Plaintiff argues that "burned bridges" is an easily understandable expression that means "damaged relationships," and he contends that, in the context of his profession as a lobbyist, a statement that he has "burned bridges" within the government both imputes an inability to perform his job and prejudices his ability to do so. Defendants argue, somewhat half-heartedly, that the disputed statements are not *per se* defamatory because they do not "fit comfortably" into any of the defamation *per se* categories.

It is apparent to the court that in context, a statement that plaintiff "burned bridges" within the government does indeed implicate the two employment-related categories of defamation *per se*. Yet this is only the beginning of the analysis because *per se* defamatory

7

statements are actionable only to the extent they are not protected by the First Amendment. Hopewell, at 517-18.

Courts have long struggled to distinguish constitutionally protected statements from those that are actionable as defamation. Until the Supreme Court, in Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990), rejected the notion that the First Amendment protects any statement that may be labeled or formulated as an opinion, courts traditionally drew a bright-line distinction between "facts" and "opinions" for the purpose of analyzing defamation claims. See Hopewell, at 518 (citing Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 99 (1996)). But the Milkovich court acknowledged that "expressions of 'opinion' may often imply an assertion of objective fact," id., at 18. It then articulated a more nuanced standard, under which an allegedly defamatory statement will receive First Amendment protection only if it cannot reasonably be interpreted as stating actual facts about a plaintiff. See id., at 20.

In applying the Milkovich standard, the Supreme Court of Illinois considers: "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 581 (2006). Naturally, the parties here disagree as to whether, taking account of these considerations, the statement that plaintiff "burned bridges" is actionable. Plaintiff cites a number of cases in which hyperbolic, humoristic, or exaggerated language was held actionable, see, e.g., Kolegas v. Heftel Broad. Corp., 154 Ill. 2d 1 (1992) ("scamming" actionable); Solaia ("essentially worthless" actionable), while defendants cite others in which loose, figurative, or imprecise language is held to be

constitutionally protected. See, e.g., Hopewell ("fired because of incompetence" not actionable); Sullivan v. Conway, 157 F.3d 1092 (7th Cir. 1998) ("a very poor lawyer" not actionable).[2]

The parties' competing cases are not irreconcilable. At bottom, the Milkovich test—although a matter of law, see Hopewell, at 518—requires a context-specific analysis, and similar words or phrases may reasonably be understood as stating actual facts in one context but mere opinion in another. That "scamming" was held to be actionable in Kolegas, for example, while the similar word "cheating" was held non-actionable in Schivarelli v. CBS, Inc., 333 Ill. App. 3d 755 (Ill. App. Ct. 2002), may appear, at first blush, to be inconsistent. But the courts in those cases were not considering the words in a vacuum. In Kolegas, the plaintiff called in to the defendants' radio show and given specific, factual information about an upcoming event he was promoting. At some point in the conversation, while still on the air, the defendants hung up on the plaintiff, then made a various offensive comments, including that the plaintiff was "not for real" and was "scamming," and that there was "no such show" as the event he purported to promote on the call. In context, the court held, the average listener could have understood defendants' statements as an actionable assertion that the plaintiff was lying.

In Schivarelli, by contrast, the entirety of the alleged defamation was the following statement made by an investigative reporter, directed to the plaintiff and broadcast on television:

---

[2] As the parties were briefing their respective positions in this case, the Supreme Court of Illinois reversed the decision in Imperial Apparel, Ltd. v. Cosmo Designer Direct, Inc., 367 Ill. App. 3d 48 (1st Dist. 2006), one of plaintiff's principal authorities for the proposition that "burned bridges" is an actionable statement of fact. See Imperial Apparel, Ltd. v. Cosmo Designer Direct, Inc. 227 Ill.2d 381 (Feb. 7, 2008) (holding "Iraqi Information Minister" non-actionable). In light of Imperial, the Supreme Court of Illinois also vacated Rose v. Hollinger International, Inc., 375 Ill. App. 3d 900 (2007), a case cited by defendants. Imperial does not alter the court's analysis here.

9

"Let's sum this up for a second, the evidence seems to indicate that you're cheating the city." Schivarelli, at 758. The court distinguished Kolegas, likening the case instead to Hopewell, and held that in the absence of additional factual context, the offending statement could not be reasonably interpreted as stating specific facts. Accordingly, it was not actionable.

The Hopewell analysis is also instructive here. In Hopewell, the plaintiff claimed the statement that he was "fired for incompetence" was actionable defamation *per se*. The court agreed that "fired for incompetence" was defamatory *per se* because it imputed to plaintiff an inability to perform his duties of employment and prejudiced him in his profession. See id., at 517-18. The court nonetheless held that the statement was not actionable. Although it acknowledged that the word "incompetence" was easily understood, the court held that its scope was too broad to be reasonably interpreted as stating specific facts about the plaintiff. Id., at 519-20.

Applying the same analysis to the facts of this case, the court arrives at the opposite conclusion. As in Hopewell the statement at issue is an easily understood expression that imputes to the plaintiff an inability to perform his duties of employment and prejudices him in his profession. Unlike in Hopewell, however, the phrase "burning bridges" suggests that plaintiff engaged in specific conduct that had an identifiable result, namely, the destruction of his relationships with individuals within the government. By contrast with the hopelessly vague and far-reaching statement in Hopewell that the plaintiff was "incompetent," the alleged statement that plaintiff "burned bridges" within the government is bounded at least by the limits of plaintiff's government contacts, any of whom could testify about his or her relationship with the plaintiff. Accordingly, a jury could determine based on evidence the parties may present

whether or not there is truth to the assertion that plaintiff "burned bridges" within the government. Defendant's motion is denied as to Counts IV and V.

Counts VI and VII (UDTPA)

Defendants argue that the UDTPA, 815 ILCS 510/2, is fundamentally intended to cover unfair trade practices, not disputes arising out of an employer's statement about the reasons for an employee's discharge. The court agrees. As plaintiff himself observes, Illinois courts have maintained a clear line of demarcation between the torts of defamation and commercial disparagement. While statements that impugn an individual's character or integrity in his or her profession may give rise to liability for defamation, statements that criticize "the quality of one's goods or services" may properly be asserted under the UDTPA. Crinkley v. Dow Jones and Co., 67 Ill. App. 3d 869, 877 (Ill. Ct. App. 1978); see also Global Relief Foundation v. New York Times Co., No. 01 C 8821, 2002 WL 31045394, at *13 (N.D. Ill., Sept 11, 2002) (Coar, J.) (claim under UDTPA for statements attacking the plaintiff or its conduct, as opposed to the quality of its goods or services, improperly "blurs the distinction between defamation and commercial disparagement.")

Although some statements may simultaneously attack both the quality of one's goods or services and the character or integrity of the person, in which case both a defamation claim and a UDTPA claim may lie, see Crinkley, at 877, plaintiff's own description of the context in which Borys made the "burned bridges" statement reveals that this is not such a case. Plaintiff claims that after his termination there was "no business reason" for Borys to discuss plaintiff's work with a government representative, underscoring the personal nature of the remark.

11

Plaintiff cites numerous cases for the proposition that a dispute between an employer and a former employee *can* fall within the scope of the UDTPA (i.e., that the relationship of the parties is not dispositive of whether the claim between them falls under the statute), but he does not explain, or cite any authority to suggest, why this particular dispute gives rise to a claim under the UDTPA. Claims VI and VII are dismissed.

## CONCLUSION

For the reasons discussed above, defendants' motions to dismiss Counts II and III and Counts VI-VII are granted. Defendants' motions to dismiss Counts IV and V are denied.

ENTER:   May 6, 2008

_____
Robert W. Gettleman
United States District Judge