**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TARAS LYSSENKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6678 |
| | ) | |
| INTERNATIONAL TITANIUM POWDER, LLC and STANLEY BORYS, | ) ) ) | Judge Robert W. Gettleman |
| | ) | Magistrate Judge Martin C. Ashman |
| | ) | |
| Defendants. | ) | |

**DEFENDANT INTERNATIONAL TITANIUM POWDER, L.L.C.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant International Titanium Powder, L.L.C. ("ITP"),[1] through its attorneys, submits the following reply in support of its motion to dismiss Count II of Plaintiff Taras Lyssenko's ("Plaintiff" or "Lyssenko") First Amended Complaint.[2]

**A.    Relevant Legal Standards**

A 12(b)(6) motion to dismiss tests whether the plaintiff has properly stated a claim for which relief may be granted, and a court will dismiss a complaint where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Miller-Calabrese v. Continental Grain Co.*, No. 96 C 6626, 1997 WL 392340, at *1 (N.D. Ill. 1997, Coar, J.) Although courts must construe the pleadings and all reasonable inferences in

---

[1] The First Amended Complaint adds a count (Count II) containing a claim against ITP (retaliatory discharge), and not against Defendant Stanley Borys. Therefore, Defendant Borys does not join in this motion as he need not file a responsive pleading to the First Amended Complaint.

[2] Citations to Plaintiff's First Amended Complaint are referenced herein as "Amend. Compl." and "Compl." respectively. Citations to Plaintiff's Opposition to ITP's Motion to Dismiss are referenced herein as ("Opp. at __").

favor of the plaintiff, to survive a 12(b)(6) motion, a plaintiff must allege either direct or inferential allegations concerning <u>all material elements</u> necessary for recovery under his chosen legal theory. *Id.* (emphasis added)

Construing all reasonable inferences in Plaintiff's favor, Plaintiff's Amended Count II fails to state all material elements necessary for recovery under his retaliatory discharge theory, as he has not alleged a "clearly mandated public policy" that was violated by the termination of his employment—a required element of the retaliatory discharge tort. *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 813 (7th Cir. 2003). Plaintiff's discussion of whether he has pled sufficient facts to survive Defendant's motion (Opp. at 3-4) therefore misses the mark. In this instance, there is no set of facts under which Plaintiff could establish that his discharge was "retaliatory" under Illinois law. Plaintiff's Amended Count II should be dismissed.

**B.     A Retaliatory Discharge Claim Must Be Based on an Applicable Public Policy**

To establish a retaliatory discharge claim, a plaintiff must show that the "public policy" upon which he relies is actually implicated under the facts at issue. As this Court clearly stated in *Murphy v. Jason Inc.*, "[A] plaintiff alleging retaliatory discharge for reported whistleblowing must demonstrate that the law he claims to be the basis of the public policy enunciates a public policy that 'plainly covers a situation to which the plaintiff objects'". 362 F. Supp. 2d 976, 980 (N.D. Ill. 2005, Gettleman, J.), citing *Stebbings v. University of Chicago*, 726 N.E.2d 1136 (1st Dist. 2000). The employer in *Murphy v. Jason Inc.* was required by OSHA to create a new guard mechanism on certain machines. Plaintiff was discharged because he decided to meet with OSHA representatives to present the mechanism for inspection, against the employer's explicit instruction (the mechanism had not been completed and was not ready for inspection). This Court found that plaintiff had no retaliatory discharge claim because the public policy enunciated

by the OSH Act (eliminating workplace hazards and other threats to employee health and safety) was inapplicable. Plaintiff was reporting to OSHA on the employer's compliance status, not reporting a workplace hazard. As this Court stated, "plaintiff was not acting as 'whistleblower'; there was simply nothing on which to blow a whistle." *Id*. In this way, the public policy that a plaintiff seeks to apply must be applicable to the situation presented.

Indeed, a plaintiff cannot simply point to a public policy implicated in other contexts and assert that such policy applies to his claim. There must be a clearly mandated public policy— one that "strike[s] at the heart of a citizen's social rights, duties and responsibilities"—that actually applies to the situation at hand. *See, e.g., Tipsword v. Ogilvy & Mather, Inc.*, 918 F. Supp. 217, 224 (N.D. Ill. 1996). *See also Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1357 (Ill. 1985) (Public policy is "to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions.")

**C.     Plaintiff Has Failed to Identify a Public Policy Implicated by his Termination**

Even the most liberal reading of Plaintiff's complaint fails to elucidate a clearly mandated public policy purportedly implicated by Plaintiff's termination. Plaintiff alleges that he was terminated in retaliation for his "inquiries to ITP concerning the lack of disclosure to ITP investors and board regarding the public-bidding process and award of business to Kurkenbach's friend", and concludes that the discharge violates a clear mandate of public policy. (Amend. Compl. ¶ 61.) Nowhere in his Amended Complaint or Opposition, however, does Plaintiff reference a statute, regulation, constitutional provision or judicial decision which enunciates a public policy mandating that a private company (such as ITP) use a public bidding system or that a company disclose to its board and investors a decision not to use a public bidding system. Plaintiff's original retaliatory discharge claim suffered this very same defect, as noted in this

Court's May 6, 2008 opinion: ("Plaintiff's claim fails because he does not identify any Illinois public policy"—much less a clearly mandated one—that would require ITP to engage in public bidding. (05/06/08 Opinion, p. 5.)

In a futile effort to save his claim, Plaintiff refers to an inapplicable alleged public policy and cites to inapposite cases. Plaintiff argues that the alleged "public policy" upon which he bases his amended claim is the public policy of "full and truthful disclosure of financial information to investors and company boards" and insists that such policy is a "clearly mandated" one. (Opp. at 5) Plaintiff provides no support for a public policy as sweeping and as broad as the 'full disclosure of all financial information.' Indeed, Plaintiff's argument would allow any financial decision which was not fully disclosed to a board or investors to give rise to a retaliatory discharge claim, whether or not the decision violated any law and whether or not the company was under any obligation to make such a disclosure. While there are laws and regulations that give rise to policies related to financial information (such as the IRS tax code), Plaintiff has failed to point to any law or other source of a public policy that could be applicable here. *See, e.g., Tipsword*, 918 F. Supp. at 224 (N.D. Ill. 1996) (plaintiff who claimed she was discharged in retaliation for her opposition to her company's plan to carry over 1992 expenses into the 1993 budget had no claim because there was no applicable public policy violated by the employer's lawful and GAAP-compliant actions).

Plaintiff's own cases underscore the point, as his cases relating to full and truthful disclosure of financial information are based on a requirement or duty actually applicable in those instances. *Roho v. Mobile Management Co.*, No. 95 C 3449, 1995 WL 549084 (N.D. Ill. 1995) (discharge in retaliation for refusal to participate in scheme to evade federal tax laws states claim for retaliatory discharge; compliance with internal revenue code strikes at the heart of the

employee's social duties and responsibilities); *Johnson v. World Color Press, Inc.,* 498 N.E.2d 575 (Ill. App. 5 Dist. 1986) (termination for objection to certain accounting practices which did not conform to generally accepted accounting principles and overstated income and asset evaluation in violation of federal securities laws implicated a clearly mandated public policy); *Youker v. Schoenberger*, 763 F. Supp. 361 (N.D. Ill. 1991) (plaintiff's termination for reporting violations of state and federal tax laws by neighboring real estate owners to neighboring tax assessors implicates a clearly mandated public policy).

Plaintiff's other cited cases do not relate to truthful financial disclosure, but they also reaffirm the need for the public policy to relate to an underlying law or duty. *See, e.g.*, *Russ v. Pension Consultants Co.*, 538 N.E. 2d 693 (Ill. App. 1 Dist. 1989) (plaintiff who pled that backdating a pension plan was a violation of federal law, that he informed the defendant that he would not backdate the plans, and was discharged in retaliation for refusing to backdate the plans, stated claim for retaliatory discharge); *Miller-Calabrese v. Continental Grain Co.*, 1997 WL 392340 (employee alleging she was discharged because she accurately reported affirmative action data in accordance with Executive Order 11246 during an Office of Federal Contract Compliance Programs audit, instead of misreporting it as commanded, stated claim for retaliatory discharge); *Petrick v. Monarch Printing Corp.*, 444 N.E.2d 588 (Ill. App. 1 Dist. 1982) (vice president allegedly discharged in retaliation for efforts to bring to his employer's attention evidence of possible embezzlement of corporate funds and to require his employer to operate in accordance with Illinois' criminal code stated a claim for retaliatory discharge).

The public policy applied in these cases was rooted in a law that was applicable to the activities objected to by the discharged employees. But pointing to public policies found in these dissimilar circumstances cannot save Plaintiff's claim, however, as this Court noted when it

5

found that Plaintiff's reliance on the Illinois Supreme Court's *Court Street Steak House, Inc.* decision in earlier briefing was "unavailing":

> [Plaintiff's] reliance on that case, however, is unavailing. In *Court Street*, the contracting entity's obligation to engage in public bidding arose not out of a general "public bidding" policy, but because it was subject to a competitive bidding statute. Here, plaintiff does not allege that any competitive bidding statute applies to ITP. While plaintiff need not cite to specific laws, he must provide some basis to conclude that a clearly mandated public policy of Illinois is implicated by his dismissal. His complaint fails to do so.

(05/06/08 Opinion, p. 6) (internal citation omitted)  The crucial link between the cited policy and the circumstances allegedly giving rise to Plaintiff's termination is lacking in Plaintiff's claim, and no additional facts or allegations will cure this defect.

As Plaintiff's cited cases and this Court's May 6 Opinion make clear, the narrow retaliatory discharge tort is invoked only when the plaintiff can allege an applicable "clearly mandated public policy" that was violated by the termination of his employment.  Because Plaintiff can prove no set of facts which will entitle him to relief under this cause of action, Plaintiff's amended Count II should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant International Titanium Powder, L.L.C. respectfully requests that this Court dismiss Count II of Lyssenko's First Amended Complaint with prejudice, grant ITP its attorneys' fees in bringing this motion, and grant such other relief as the Court may consider just.

Dated: August 11, 2008 Respectfully submitted,

/s/     Matthew D. Lahey

Matthew D. Lahey
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606
(312) 258-5500
(312) 258-5600

*Attorney for Defendant, International Titanium Powder, L.L.C.*

## **CERTIFICATE OF SERVICE**

I, Matthew D. Lahey, an attorney, hereby certify that on August 11, 2008, I electronically filed the foregoing Defendant's Reply in Support of its Motion to Dismiss Count II of Plaintiff's First Amended Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Anthony J. Carballo
Gia F. Colunga
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
(312) 360-6000
tcarballo@freebornpeters.com
gcolunga@freebornpeters.com

/s/    Matthew D. Lahey

CH2\2673526.1