IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TARAS LYSSENKO,                              )
                                             )
       Plaintiff,                       )  No.  07 C 6678
   v.                                        )
                                             )  Judge Robert W. Gettleman
INTERNATIONAL TITANIUM POWDER, LLC,          )
and STANLEY BORYS,                           )
                                             )
       Defendants                       )

## MEMORANDUM OPINION AND ORDER

Taras Lyssenko has filed an amended complaint against his former employer, International Titanium Powder ("ITP"), reasserting claims for breach of contract (Count I), retaliatory discharge (Count II), and defamation (Counts III and IV). The court dismissed an earlier iteration of plaintiff's retaliatory discharge claim on May 6, 2008.[1] Defendant ITP has filed a motion to dismiss Count II of the amended complaint under Fed. R. Civ. P. 12(b)(6), which the court grants for the reasons stated below.

Under Illinois law, the tort of retaliatory discharge is a narrow exception to the rule that at-will employees (such as plaintiff) may be terminated for any reason at all, or indeed, for no reason. see Long v. Commercial Carriers, Inc., 57 F.3d 592, 594 (7th Cir. 1995) (citing Barr v. Kelso-Burnett Co., 106 Ill.2d 520 (1985)). Accordingly, to prevail on a claim of retaliatory discharge, a plaintiff must demonstrate, among other things, that his or her termination violated clearly established public policy. See Hicks v. Resolution Trust Corp., 970 F.2d 378, 381-82 (7th Cir. 1992) (citing Palmateer v. International Harvester Co., 85 Ill.2d 124, 130 (1981) and

---

[1]Memorandum Opinion and Order of May 6, 2008 (Docket No. 27).

Wheeler v. Caterpillar Tractor Co., 108 Ill. 2d 502, 510-512 (1985)). Identifying a "clearly established public policy" requires an analysis of "the State's constitution and statutes and, when they are silent…its judicial decisions." Palmateer, at 130.

In his original complaint, plaintiff alleged that he was fired for voicing concerns about ITP's award of construction projects to a friend of one of the company's officers, who charged above-market rates, instead of engaging in competitive public bidding.[2] In its May 6, 2008, opinion, this court rejected plaintiff's sweeping assertion that because "public policy favors the use of the public-bidding system," his termination was actionable. The court found that plaintiff had failed to identify any Illinois public policy that would require ITP to engage in public bidding and dismissed his claim on that basis.

In his amended complaint, plaintiff recasts his claim slightly, seizing on the court's observation that "because the complaint does not allege that plaintiff was terminated for raising concerns about ITP's financial disclosures, or assert that ITP failed to make truthful financial disclosures, his argument and authorities [on that issue] are irrelevant." (May 6, 2008, Op., at 6). Plaintiff has now woven allegations that track the court's language into his complaint, and his amended claim is premised not on a public policy favoring public bidding, but instead on "the public policy of full and truthful disclosure of financial information to investors and company boards." Yet the difference between plaintiff's original claim and his amended claim is entirely cosmetic. The only non-disclosure plaintiff asserts is of "the financial information relating to awarding construction projects to Kurkenbach's friend rather than utilizing the public-bidding

---

[2]Plaintiff's original complaint asserted retaliatory discharge in Count III.

system." The result is that plaintiff's current claim relies on an even more sweeping interpretation of Illinois' public policy than his earlier claim.

In the absence of any requirement that ITP use the public bidding system in the first place, his claim that ITP violated public policy when it failed to disclose that it had failed to do so has very little traction. Indeed, under plaintiff's theory of liability, a closely held corporation's failure to disclose any business decision its principals make in the ordinary course of business (most of which presumably have some financial consequences for the company) could be deemed a violation of "clearly mandated public policy" sufficient to support a claim of retaliatory discharge. The court agrees with defendant that that is not the law, and none of plaintiff's cited authorities suggests otherwise.

Plaintiff's reliance on Johnson v. World Color Press, Inc., 147 Ill.App.3d 746 (Ill.App.Ct. 1986), is misplaced. In that case, the Illinois Appellate Court reversed a lower court's dismissal of a retaliatory discharge claim where the plaintiff had alleged he was terminated for his opposition to certain of his employer's accounting practices, which he believed violated federal securities laws. According to the complaint in Johnson, the employer was a wholly-owned subsidiary of a public corporation. The plaintiff alleged that he was fired for objecting to accounting entries that did not conform to generally accepted accounting principles.

The distinctions between Johnson and the instant case are patent. To begin with, the Johnson plaintiff identified the clearly mandated public policy he believed his employer had violated with reference to specific laws and regulations. More importantly, however, the plaintiff asserted a clear basis for concluding that the public policy he invoked was actually implicated by his termination: the employer was a public company subject to federal securities

3

laws.  This is precisely the kind of nexus plaintiff's claim lacks.  Here, plaintiff asserts only that "ITP investors and board deserved a full financial report revealing ITP's decision to award construction projects to Kurkenbach's friend."

That certain companies must disclose certain financial information in certain circumstances is simply too general a proposition to support plaintiff's claim.  Yet that is all that plaintiff's collection of authorities teaches.  Neither Johnson nor any other case plaintiff cites suggests that his termination, under the particular circumstances alleged, implicated a clearly established public policy.

As the court previously noted, plaintiff need not cite to specific laws, see Sciortino v. Winnebago County Hous. Auth., No. 94 C 50375, 1996 WL 153687, at *2 (N.D. Ill., April 2, 1996); but he must provide some basis for concluding that his dismissal violated a public policy that "strike[s] at the heart of a citizen's social rights, duties, and responsibilities," Palmateer v. International Harvester, Co., 85 Ill.2d. 124, 130 (1981), or involves the protection of each citizen's health and safety, Wheeler v. Caterpillar Tractor Co., 108 Ill. 2d 502, 510-12 (1985).  Defendant correctly points out that this "crucial link" is missing.  Plaintiff's retaliatory discharge claim fails as a matter of law because his termination simply "cannot be said to be the type of dispute that affects the citizens of the State collectively."  Petrik v. Monarch Printing Corporation, 143 Ill.App.3d 1, 10 (Ill. App. Ct. 1986).

## CONCLUSION

For the reasons discussed above, defendant ITP's motion to dismiss Count II of plaintiff's amended complaint with prejudice is granted.[3]

**ENTER:** October 20, 2008

_____
**Robert W. Gettleman
United States District Judge**

---

[3] Defendant's request for attorney's fees is denied.