IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TARAS LYSSENKO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6678 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| INTERNATIONAL TITANIUM POWDER, LLC | ) | |
| and STANLEY BORYS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Taras Lyssenko has filed a six-count Fourth Amended Complaint against his former employer, International Titanium Powder ("ITP"), asserting claims for breach of contract (Count I), promissory estoppel (Count II), and defamation *per se* (Counts III, IV, V, and VI). Plaintiff has also sued ITP's CEO, Stanley Borys, for defamation *per se* (Counts III, IV, V, and VI). Defendants ITP and Borys have moved to dismiss Counts IV, V, and VI of the Fourth Amended Complaint under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion is granted as to Counts IV and V and denied as to Count VI.

**FACTS**

The facts alleged in the complaint are taken as true for purposes of the instant motion. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Plaintiff alleges that he entered into an oral agreement with ITP in 2002, under which he would seek government funding for ITP projects relating to the development of a process to produce low-cost titanium and titanium alloys. ITP agreed to pay him 5% of the funds received as a result of his efforts. From 2002 to 2004, plaintiff contacted members of Congress and representatives of various

government agencies in pursuit of funding for ITP and engaged in business development activities that were outside the scope of his agreement with ITP.

In or around February 2004, after ITP received funding from the government, the parties modified their agreement. According to plaintiff, the obligations remained the same under the modified agreement (i.e., plaintiff would continue to seek government funding on ITP's behalf, and ITP was still obligated to compensate plaintiff in an amount of 5% of the funding he obtained), but additional provisions were agreed upon. Specifically, plaintiff would receive installment payments in the form of a monthly salary of $9000, health insurance, and FICA, to pay down the total amount owed to plaintiff under the original agreement. Although plaintiff claims that ITP failed to pay the full amount owed to him, he does not claim that ITP failed to pay the agreed-upon monthly salary or provide benefits during the period from February 2004 through the termination of his employment in August 2007.

The parties' relationship soured. Plaintiff claims that although he continued to be successful in obtaining funds for ITP from a number of government sources, Borys and others at ITP began criticizing him and seeking ways to avoid payment under the original agreement.

Plaintiff was terminated in August 2007. He claims that, in addition to refusing to pay the remaining amount owed him, Borys and others at ITP have been defaming and disparaging plaintiff since his termination. Specifically, plaintiff alleges that during ITP board meetings on December 17, 2007, and January 10, 2008, Borys made false and defamatory statements in an attempt to prevent plaintiff from receiving compensation for his efforts on behalf of ITP. Further, plaintiff alleges that, in October 2007, Borys told Dr. Vladimir Moxson of ADMA Products, Inc. that ITP terminated plaintiff for "overpromising what [ITP] can deliver,"

2

"overpromising [the] company['s] ability," and/or "damaging ITP['s] reputation by moving too fast and promising too much," and that, although Dr. Moxson had considered plaintiff for a government relations consultant position, he did not subsequently hire plaintiff.

## DISCUSSION

Legal Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). Nevertheless, the complaint must plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). Because both parties rely on facts outside the complaint, the parties apparently agree to have the motion treated as one for summary judgment under Rule 56, and the court will treat the instant motions under that rule.

Count IV (Defamation *Per Se* December 17, 2007)

Plaintiff alleges that, during a board meeting on December 17, 2007, Borys stated to ITP board members and guests (Wayne Nyberg, Tracy Huber, Scott Temple, Craig Ibsen) that plaintiff had "violat[ed] his employment conditions" at ITP, "remov[ed] and/or destr[oyed] ITP business records," engaged in "protracted hostility towards other ITP employees," and engaged in an "unauthorized diversion of the expected DOD Defense Appropriations line item from the Army to the Title III program," among other statements. Plaintiff claims that these statements, which are taken almost verbatim from the December 17, 2007, board meeting minutes, constitute

3

*per se* defamation because they prejudice him in his profession and because they suggest an inability to perform his employment duties and a lack of integrity. See, e.g., Hopewell v. Vitullo, 299 Ill. App. 3d 513, 517 (1998) (recognizing five categories of statements that constitute defamation *per se*). The portion of the December 17, 2007, ITP board meeting minutes regarding plaintiff reads:

> (9.2) T. Lyssenko bonus determination (Borys)
> Mr. Taras Lyssenko has ceased to be employed with the company as of 8/3/07. Notwithstanding, the Board of Directors did consider whether he was eligible for a bonus for 2007. Discussion was held, which included but was not limited to the following considerations: (1) Mr. Lyssenko's violations of his employment conditions, (2) Mr. Lyssenko's removal and/or destruction of ITP business records upon his departure, (3) Mr. Lyssenko's protracted hostility toward other ITP employees, and (4) Mr. Lyssenko's unauthorized diversion of the expected DOD Defense Appropriations line item from the Army to the Title III program. After thorough discussion, the Board unanimously voted not to award Mr. Lyssenko a bonus payment for 2007.

Arguing that the one-year statute of limitations bars this claim, defendants have moved to dismiss Count IV, which was filed on August 27, 2009, in the Second Amended Complaint. Plaintiff argues that the discovery rule applies, and the limitations period did not begin to run until the August 21, 2009, deposition of Tracy Huber, who attended the board meeting. Defendants respond that plaintiff had notice of the statements from board meeting minutes that were produced as part of a 242-page production on August 22, 2008, and thus the limitations period began to run on that date, if the discovery rule applies.[1]

A one-year statute of limitations governs defamation actions in Illinois. 735 ILCS 5/13-201. The discovery rule governs limitations in Illinois and "postpone[s] the starting of the period

---

[1] Defendants argue that, even if the discovery rule applies, the statements made at the board meeting are protected by a qualified privilege. The court does not address defendants' argument here because Count IV is dismissed on other grounds.

4

of limitations until the injured party knows or should have known of his injury." City Nat'l Bank of Fla. v. Checkers, Simon & Rosner, 32 F.3d 277, 282 (7th Cir. 1994) (quoting Knox Coll. v. Celotex Corp., 88 Ill. 2d 407, 414 (1981)).

Defendants' August 22, 2008, production of board meeting minutes put plaintiff on notice of the very statements plaintiff alleges as defamatory in Count IV. "The discovery rule does not allow a plaintiff to wait until the defendant admits it has caused plaintiff's damage," and it "places the burden on plaintiffs to inquire as to the existence of a cause of action." Carey v. Kerr-McGee Chem. Corp., 999 F. Supp. 1109, 1116 (N.D. Ill. 1998). Defendants need not explicitly reveal, as plaintiff argues, that defamatory statements were made or who made them. Rather, plaintiff must exercise due diligence once he is put on notice that some defamatory statements might have been made. See F.D.I.C. v. Wabick, 214 F. Supp. 2d 864, 876 (N.D. Ill. 2002).

Although the due diligence inquiry may be fact-specific, plaintiff's reliance on Installation Servs., Inc. v. Elec. Research, Inc., 2005 WL 645244 (N.D. Ill. Mar. 21, 2005), and White v. Kenneth Warren & Son, Ltd., 2000 WL 91920 (N.D. Ill. Jan. 14, 2000), is misguided. The Installation Services court distinguished between a lack of any indication that a plaintiff "knows or should have known of his injury" and cases like Fries v. Chicago & Nw. Trans. Co., 909 F.2d 1092 (7th Cir. 1990), and U.S. v. Duke, 229 F.3d 627 (7th Cir. 1990), where the defendants identified specific facts indicating that the plaintiffs had not exercised due diligence. See Fries, 909 F.2d at 1094; Duke, 229 F.3d at 630. Further, the Fries court explained that a plaintiff need not have actual knowledge or know the governing cause of his injury, but only need know or have reason to know of a potential cause. Fries, 909 F.2d at 1095-96. As in

5

Installation Services, the White court found that the plaintiffs had "no reason" to doubt, suspect, or know of certain transactions and opinions. White at *4.

This is certainly not the instant case. Defamatory language need not be quoted verbatim. See, e.g., Chisholm v. Foothill Capital Corp., 940 F. Supp. 1273, 1284 (N.D. Ill. 1996). Plaintiff might not have been certain of the exact words or all the words spoken at the board meeting or by whom until the 2009 depositions, but the minutes clearly provided notice of the very statements alleged in Count IV, and thus placed the burden of inquiry on plaintiff. Consequently, the production of the minutes began the one-year limitations period.

Plaintiff makes several arguments in response. First, plaintiff argues that he did not learn of the statements until Huber's deposition on August 21, 2009. Yet, plaintiff "should have known" of his potential injury when the minutes were produced and could have conducted follow-up inquiries to learn of the precise statements. Even if plaintiff, as he argues, did not have a good-faith basis to bring additional claims based on the minutes until he learned specific details from Huber's deposition, his lack of details alone is not a basis for the continued tolling of the statute of limitations. During the limitations period, plaintiff had one year to acquire the details required to bring a claim for defamation. Further, whether the alleged defamation was written or oral is immaterial. Although written, the minutes clearly suggest that plaintiff was discussed orally at the board meeting; that is what minutes of a meeting are meant to disclose.

Second, plaintiff argues that equitable tolling and equitable estoppel render the statute of limitations inapplicable because defendants provided a false and misleading answer to plaintiff's interrogatory and because defendants delayed document production and depositions. Equitable tolling "differs from [the discovery rule] in that the plaintiff is assumed to know that he has been

6

injured, so that the statute of limitations has begun to run; but [despite diligent inquiry] he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." Smith v. City of Chicago Hts., 951 F.2d 834, 839 (7th Cir. 1991). The defendant need not act wrongfully or act at all. Equitable estoppel, in contrast, requires that the plaintiff show improper and harmful conduct by the defendant upon which the plaintiff reasonably relies. This doctrine "comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir. 1978).

The court does not agree that plaintiff's interrogatory and defendants' answer indicate defendants' improper conduct or plaintiff's inability to obtain information despite diligent inquiry. First, plaintiff's interrogatory was not directed at the communications of ITP employees:

> Identify all communications to or in the presence of persons not employed by ITP regarding Lyssenko's governmental relations and business development efforts for ITP, the termination of Lyssenko's employment with ITP, and/or Lyssenko's performance as a government-relations consultant.

Plaintiff claims that this request asked defendants to identify the statements made at the board meeting. In accordance with equitable tolling, plaintiff had notice of potential injury and the statute of limitations had begun to run, but plaintiff's request does not reflect an inability to obtain information despite diligent inquiry. The words "communications to or in the presence of persons not employed by ITP" do not suggest that plaintiff was asking for communications at ITP board meetings, which could reasonably include ITP employees. In this context, a diligent

7

inquiry might have asked for communications at board meetings, including discussions about plaintiff's compensation, or might have followed up on defendants' answer. In any event, defendants' production of the board meeting minutes months prior to defendants' response to the interrogatory disclosed all that plaintiff needed to know about the allegedly defamatory statements to begin the limitations period.

Further, the court does not agree that discovery delays indicate defendants' improper conduct or plaintiff's inability to obtain information despite diligent inquiry. The July 31, 2009, joint motion to extend discovery suggests cooperation between the parties and that plaintiff agreed with the pace and format of discovery. The record does not indicate that plaintiff could not depose witnesses, but that he chose to wait until the completion of written discovery. Further, the record does not reflect improper and harmful conduct by defendants, who acted in concert with plaintiff in the timing of discovery. Thus, neither equitable tolling nor equitable estoppel is applicable.

Accordingly, because plaintiff was on notice of his potential claim as of August 22, 2008, and did not file until August 27, 2009, Count IV is dismissed.

Count V (Defamation *Per Se* January 10, 2008)

Plaintiff alleges that, during a board meeting on January 10, 2008, Borys stated to ITP board members and guests (Wayne Nyberg and Tracy Huber) that plaintiff had "violat[ed] his employment conditions" at ITP, "remov[ed] and/or destr[oyed] ITP business records," engaged in "protracted hostility towards other ITP employees," and engaged in an "unauthorized diversion of the expected DOD Defense Appropriations line item from the Army to the Title III program." Plaintiff claims that these statements constitute *per se* defamation because they

prejudice him in his profession and because they suggest an inability to perform his employment duties and a lack of integrity. See, e.g., Hopewell, 299 Ill. App. 3d at 517.

Arguing that the "single publication rule" renders this claim time-barred, defendants have moved to dismiss Count V, which was filed on August 27, 2009, in the Second Amended Complaint. Plaintiff had notice of the statements from board meeting minutes produced on December 11, 2008, and thus the limitations period began to run on that date and would not bar the claim in Count V. Yet, the "single publication rule," if applicable, would preclude claims based on the statements made at the December 17, 2007, board meeting (Count IV), which were repeated at the 2008 meeting. Defendants further argue that the statements made at the board meeting are protected by a qualified privilege.

The "single publication rule," codified in the Uniform Single Publication Act (USPA), 740 ILCS 165/1, provides:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

Thus, although the general rule is that each communication by the same defamer is a separate and distinct publication, Restatement (Second) of Torts § 577A cmt. a (1977), the USPA provides an exception. The Restatement further states that a purpose of the single publication rule is "to avoid multiplicity of actions." Id. § 577A cmt. b.

The courts consider content and audience, among other factors, to determine application of the USPA. Some courts have found that the single publication rule applies in the credit

9

reporting context because of identical content in the reports. Hukic v. Aurora Loan Servs., 588 F.3d 420, 436-37 (7th Cir. 2009). Nevertheless, the Hukic court noted that identical content is not dispositive under the Restatement and noted the importance of audience. Id. at 437. For example, in Blair v. Nev. Landing P'ship, RBG, LP, 369 Ill. App. 3d 318, 325 (2006), the court stated that republication "can constitute a new cause of action if the publication is altered so as to reach a new audience or promote a different product." In Wells v. Talk Radio Network-FM, Inc., 2008 WL 4888992, at *3 n.2 (N.D. Ill. Aug. 7, 2008), the court distinguished the facts from those in Blair, reasoning that "[b]ecause plaintiff pleads and the Court finds defendants' use of plaintiff's voice in the case at bar to be geared towards attracting *new* listeners, Blair is inapplicable to facts of the case at bar."

In the instant case the content of the statements on December 17, 2007, is identical to that on January 10, 2008, and the audience of the January 10, 2008, statements was essentially identical to the audience on December 17, 2007, in that no new person heard the allegedly defamatory statements. Nevertheless, the court agrees with plaintiff that Hukic is persuasive and that other factors, particularly purpose and intent, must be considered.

First, as in Hukic, "the concern about a multiplicity of lawsuits is not present here as it is in the mass publication context." Hukic, 588 F.3d at 437. Although this court does not address whether the USPA applies *only* in the mass publication context, the purpose of the USPA, largely "to avoid multiplicity of actions," may be served best in such a context. In Wathan v. Equitable Life Assurance Soc'y of the U.S., 636 F. Supp. 1530 (C.D. Ill. 1986), the court provided an in-depth analysis of the USPA. While some courts maintain that the USPA applies only to single, integrated publications involving the mass media, others "have expanded the

scope of the rule – which is based on judicial economy and undue harassment of defendants – to purposes beyond those for which it was originally devised, and to situations where the concept is a complicating and often misleading factor." Id. at 1533. This court declines to expand the scope of the USPA under the facts in the instant case.

Second, "[a]nother reason for the single publication rule in the mass newspaper or magazine publication context is that even though numerous copies result from an initial publication, 'no conscious intent arises until the defendant consciously as a second edition republishes the article.'" Hukic, 588 F.3d at 437. Illinois courts have embraced the Winrod test, Winrod v. Time, Inc., 334 Ill. App. 59, 72 (1948), first articulated in Wolfson v. Syracuse Newspapers, 4 N.Y.S.2d 640, aff'd 279 N.Y. 716 (1938). The Winrod test considers whether republication is done consciously and with intent. In the instant case as in Hukic, plaintiff alleges that defendant Borys affirmatively made defamatory statements during a board meeting on January 10, 2008. For the reasons discussed above, the USPA does not apply.

Defendants further argue that the statements made at the board meeting are protected by a qualified privilege. Plaintiff has no obligation to anticipate or attempt to defuse this defense at the pleading stage. Robinson v. Morgan Stanley, 2007 WL 2815839, at *8 (N.D. Ill. Sept. 24, 2007); see Beasley v. St. Mary's Hosp. of Centralia, 200 Ill. App. 3d 1024, 1034 (1990). However, defendants' motion to dismiss may raise the issue of qualified privilege if the allegedly defamatory statements and the complaint demonstrate such privilege. Edwards by Phillips v. Univ. of Chicago Hosps. and Clinics, 137 Ill. App.3d 485, 489 (1985); see also Kim v. Kim, 360 F. Supp. 2d 897, 904 (N.D. Ill. 2005); Millsaps v. Bankers Life Co., 35 Ill. App. 3d 735, 742 (1976); Ashe v. Hatfield, 13 Ill. App. 3d 214, 217 (1973). Further, contrary to plaintiff's

assertion, "[t]he issue of whether an allegedly defamatory statement is protected by a qualified privilege is a question of law for the court." Edwards, 137 Ill. App. 3d at 489.

The elements of qualified privilege are: (1) good faith; (2) interest or duty to be upheld; (3) limited in its scope to that purpose; (4) proper occasion; and (5) publication in a proper manner and to the proper parties. Id. In the instant case, the statements were made at a board meeting in an employment context to evaluate plaintiff's work performance and discuss his compensation. Thus, the statements appear to have been made in good faith and for a proper purpose limited in scope, on a proper occasion, and in a proper manner to the proper parties.

Plaintiff argues that the statements were not limited in scope because guests were in attendance. However, the guests were at a board meeting at which matters such as compensation are commonly discussed, and plaintiff does not allege that the guests were in attendance for an unnecessary or improper reason, or that their presence was not required for a business purpose. Indeed, "communications motivated by a legitimate business interest, even if false and defamatory, may be protected by a qualified privilege." Id. at 489-90. Accordingly, the court concludes that the statements at the board meeting are subject to a qualified privilege.

Defendants' qualified privilege means that plaintiff is required to plead and prove abuse of privilege or lack of justification and, under the pleading standards governing Illinois state courts, plaintiff must "set forth factual allegations from which it can reasonably be inferred that defendant's conduct was unjustified." HPI Healthcare Servs., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill. 2d 145, 158 (1989). More specifically, "[i]n order to withstand a motion to dismiss, plaintiff's pleadings must raise an inference that defendant acted with actual malice, i.e., that defendant had knowledge of the falsity, or lacked reasonable grounds for believing the truth of

the statement." Edwards, 137 Ill. App. 3d at 490.  Under the liberal notice pleading standards of the federal courts, on the other hand, plaintiff need not allege specific facts.  Nevertheless, as under Illinois law, where a defendant's conduct is privileged, "it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious."  Kim, 360 F. Supp. 2d at 904 (quoting MidAmerican Energy Co. v. Util. Res. Corp., 2003 WL 22359526, at *2 (N.D. Ill. 2003)); see also Robinson, 2007 WL 2815839, at *8 ("[O]nce a defendant establishes a qualified privilege, a plaintiff must prove that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." (quoting Kuwik v. Starmark Star Mktg. and Admin., Inc., 156 Ill. 2d 16, 24 (1993)).  In the instant case, nothing in the pleadings indicates abuse of the privilege or that defendants' statements were unjustified or malicious.

Because the elements of qualified privilege are evident and plaintiff has failed to overcome the privilege by alleging that defendants' conduct was unjustified or malicious, the statements made at the board meeting are protected by a qualified privilege.  Count V is dismissed.

Count VI (Defamation *Per Se* October 2007)

Plaintiff alleges that Borys told Dr. Moxson of ADMA Products, Inc. that ITP terminated plaintiff for "overpromising what [ITP] can deliver," "overpromising [the] company['s] ability," and/or "damaging ITP['s] reputation by moving too fast and promising too much."  Although Dr. Moxson had allegedly considered plaintiff for a government relations consultant position, he did not subsequently hire plaintiff.  Plaintiff claims that these statements amount to *per se* defamation because they prejudice him in his profession and because they suggest an inability to

13

perform his employment duties and a lack of integrity.  See, e.g., Hopewell, 299 Ill. App. 3d at 517.  Defendants argue that the statements are non-actionable opinions protected by the First Amendment because they do not have a precise and readily understood meaning and they are not objectively verifiable.

Illinois courts recognize five categories of statements that constitute defamation *per se*, of which two may be applicable: (1) statements imputing an inability to perform or want of integrity in the discharge of duties of office or employment; and (2) statements that prejudice a party in his or her profession or trade.  Id.  In context, the statements that plaintiff "overpromis[ed] what [ITP] can deliver," "overpromis[ed the] company['s] ability," and "damag[ed] ITP['s] reputation by moving too fast and promising too much" implicate the two employment-related categories of defamation *per se*.  Defendants do not argue to the contrary. *Per se* defamatory statements, however, are actionable only to the extent they are not protected by the First Amendment.

Although courts traditionally drew a bright-line distinction between facts and opinions for the purpose of analyzing defamation claims, the Supreme Court rejected the notion that the First Amendment protects any statement that may be labeled or formulated as an opinion.  See Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990).  The Milkovich court acknowledged that "expressions of 'opinion' may often imply an assertion of objective fact." Id. at 18.  A more nuanced standard was established, under which an allegedly defamatory statement receives First Amendment protection only if it cannot reasonably be interpreted as stating actual facts about a plaintiff.  See id. at 20. In applying this standard, Illinois courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether

14

the statement's literary or social context signals that it has factual content." Solaia Tech., LLC
v. Specialty Publ'g Co., 221 Ill. 2d 558, 581 (2006).

Naturally, the parties disagree as to whether the statements that plaintiff "overpromised" and "damaged ITP's reputation by moving too fast and promising too much" are actionable. Plaintiff provides contextual analysis and points to several cases in which loose and figurative language was held actionable, while defendants cite other cases in which loose and figurative language was held constitutionally protected.

The Milkovich test requires a context-specific analysis, and similar words or phrases may reasonably be understood as stating actual facts in one context but opinion in another. Hopewell is instructive here. In Hopewell, the plaintiff claimed that the statement that he was "fired for incompetence" was actionable defamation *per se*. While the court agreed that the statement was defamatory *per se* because it imputed an inability to perform his duties of employment and prejudiced him in his profession, the court held that the statement was not actionable. Hopewell, 299 Ill. App. 3d at 517-18. Although the court acknowledged that the statement was easily understood, the court held that its scope was too broad to be reasonably interpreted as stating specific facts about the plaintiff. See id. at 519-20.

Applying the same analysis to the facts of this case, the court arrives at the opposite conclusion. According to plaintiff's complaint, Borys made the statements to Dr. Moxson, another titanium businessman whose company also worked with the government. Plaintiff alleges that Dr. Moxson had been considering plaintiff for a government relations consultant position but, after hearing from Borys, he did not subsequently hire plaintiff. In context, the statements that plaintiff "overpromised" and "damaged ITP's reputation by moving too fast and

promising too much" are easily understood expressions suggesting that plaintiff engaged in specific conduct that had an identifiable result. That is, the statements can "reasonably be interpreted as stating actual facts about a plaintiff." Milkovich, 497 U.S. at 20.

According to plaintiff, these statements were interpreted as facts by Dr. Moxson, influencing him in his decision not to hire plaintiff. While the statement in Hopewell that the plaintiff was "incompetent" was vague and far-reaching, the statements that plaintiff "overpromised" and "damaged ITP's reputation by moving too fast and promising too much" are bounded at least by the limits of plaintiff's government contacts, any of whom could testify about plaintiff's promises, subsequent actions, and their impact. Further, a jury could determine based on evidence the parties may present whether the statements were true. This is unlike the statement "incompetent" in Hopewell, which was not verifiable in context.

Defendants' motion to dismiss Count VI is denied.

## **CONCLUSION**

For the reasons discussed above, defendants' motion is granted as to Counts IV and V and denied as to Count VI.


**ENTER:** March 25, 2010

_____
   **Robert W. Gettleman**
   **United States District Judge**

16