IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TARAS LYSSENKO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6678 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| INTERNATIONAL TITANIUM POWDER, LLC | ) | |
| and STANLEY BORYS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Taras Lyssenko has filed a six-count Fifth Amended Complaint against his former employer, International Titanium Powder ("ITP"), and its CEO, Stanley Borys, asserting claims for breach of contract (Count I), promissory estoppel (Count II), and defamation *per se* (Counts III, IV, V, and VI).[1] Defendants ITP and Borys filed a motion to dismiss Counts IV, V, and VI, which the court granted as to Counts IV and V and denied as to Count VI in its March 25, 2010, opinion (the "Opinion"). Lyssenko subsequently filed a motion to reconsider, which the court denied as to both counts. However, Lyssenko was given leave to amend the complaint to re-plead Count V.[2] Defendants have moved to dismiss Count V of the Fifth Amended Complaint filed on June 15, 2010, under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, defendants' motion to dismiss Count V is denied.

In addition, Lyssenko has moved to strike ITP's newly asserted affirmative defense. On May 5, 2010, ITP alleged for the first time that Lyssenko was not an ITP employee, and thus Lyssenko's contract with ITP (relating to Count I) and any related promise (relating to Count II)

---

[1] Lyssenko has named Borys individually only in Counts III, IV, V, and VI.

[2] Counts III and IV have been dismissed with prejudice.

are illegal and unenforceable under 41 U.S.C. § 254 and 10 U.S.C. § 2306. For the reasons discussed below, Lyssenko's motion to strike ITP's affirmative defense is granted.

## FACTS

The facts alleged in the complaint are taken as true for purposes of the instant motions. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Lyssenko alleges that he entered into an oral agreement with ITP in 2002, under which he would seek government funding for ITP projects involving the development of a process to produce low-cost titanium and titanium alloys. ITP agreed to pay him 5% of the funds received as a result of his efforts. From 2002 to 2004, Lyssenko contacted members of Congress and representatives of various government agencies in pursuit of funding for ITP and engaged in business development activities that were outside the scope of his agreement with ITP.

In or around February 2004, after ITP received funding from the government, the parties modified their agreement. According to Lyssenko, obligations remained the same under the modified agreement (i.e., Lyssenko would continue to seek government funding on ITP's behalf, and ITP was still obligated to compensate Lyssenko in the amount of 5% of funding obtained), but additional provisions were agreed upon. Specifically, Lyssenko would receive installment payments in the form of a monthly salary of $9000, health insurance, and FICA, to pay down the total amount owed to Lyssenko under the original agreement. Although Lyssenko claims that ITP failed to pay the full amount owed to him, he does not claim that ITP failed to pay the agreed-upon monthly salary or provide benefits during the period from February 2004 through the termination of his employment in August 2007.

The parties' relationship soured. Lyssenko claims that although he continued to be successful in obtaining funds for ITP from a number of government sources, Borys and others at ITP began criticizing him and seeking ways to avoid paying him under the original agreement.

Lyssenko was terminated in August 2007. He claims that, in addition to refusing to pay the balance owed him, Borys and others at ITP have been defaming and disparaging Lyssenko since his termination. Specifically, Lyssenko alleges that during an ITP board meeting on January 10, 2008, Borys made false and defamatory statements in an attempt to prevent Lyssenko from receiving compensation for his efforts on behalf of ITP.

## **DISCUSSION**

**Motion to Dismiss**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). Nevertheless, the complaint must plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

**Count V (Defamation *Per Se*)**

Lyssenko alleges that, during a board meeting on January 10, 2008, Borys[3] stated to ITP board members and guests (Tracy Huber and Wayne Nyberg) that Lyssenko had "violat[ed] his

---

[3]The Fifth Amended Complaint alleges that ITP board member James Krambeck also defamed Lyssenko.

3

employment conditions" at ITP, "remov[ed] and/or destr[oyed] ITP business records," engaged in "protracted hostility towards other ITP employees," and engaged in an "unauthorized diversion of the expected DOD Defense Appropriations line item from the Army to the Title III program." Lyssenko claims that these statements, which are taken almost verbatim from the board meeting minutes, constitute *per se* defamation because they prejudice him in his profession and because they suggest an inability to perform his employment duties and a lack of integrity. See, e.g., Hopewell v. Vitullo, 299 Ill. App. 3d 513, 517 (1 Dist. 1998) (recognizing five categories of statements that constitute defamation *per se*).

Defendants argue that the statements made at the board meeting are protected by a qualified privilege. A statement is protected by a qualified privilege if it is: (1) made in good faith; (2) made pursuant to an interest or duty to be upheld; (3) limited in scope to that purpose; (4) made on a proper occasion; and (5) published in a proper manner and to the proper parties. Edwards by Phillips v. Univ. of Chicago Hosps. and Clinics, 137 Ill. App. 3d 485, 489 (1 Dist. 1985). In its Opinion, the court found that the statements were protected by a qualified privilege and that Lyssenko failed to overcome the privilege.

"Communications motivated by a legitimate business interest, even if false and defamatory, may be protected by a qualified privilege." Id. at 489-90. In the instant case, the statements were made at a board meeting in an employment context to evaluate Lyssenko's work performance and discuss his compensation. Thus, they appear to have been made in good faith and for a proper purpose limited in scope, on a proper occasion, and in a proper manner to the proper parties. Accordingly, the statements at the board meeting are subject to a qualified privilege.

Matters such as compensation are commonly discussed at board meetings, which is not improper even if not all attendees are involved in the decision-making process. It would be impractical to require uninvolved attendees to leave and return to a meeting depending on the topic being addressed. Although Lyssenko still does not allege that the guests were in attendance for an unnecessary or improper reason or that their presence was not required for a business purpose, the allegations of the Fifth Amended Complaint raise the question of whether there was an abuse of privilege.

The Fifth Amended Complaint adds the following allegations that were not included in the previous complaint: (1) Borys and Krambeck were attempting to prevent Lyssenko from receiving compensation; (2) the statements were made to more persons than necessary to vote on Lyssenko's compensation; (3) Borys and Krambeck could have made the statements in a closed executive session at which only board members with authority to vote attend, and topics addressed are not included in the minutes; (4) guests Huber and Nyberg had no authority to vote; (5) Borys and Krambeck did not sufficiently investigate and presented no evidence regarding the accuracy of the statements; (6) Lyssenko could not respond to the statements because he was not invited to the meeting; and (7) the minutes were later distributed to those in attendance, including the non-board members.

Defendants' qualified privilege requires Lyssenko to plead and prove abuse of privilege and "that the [defendants'] conduct was unjustified or malicious." Kim v. Kim, 360 F. Supp. 2d 897, 904 (N.D. Ill. 2005) (quoting MidAmerican Energy Co. v. Util. Res. Corp., 2003 WL 22359526, at *2 (N.D. Ill. 2003)); see also Robinson v. Morgan Stanley, 2007 WL 2815839, at *8 (N.D. Ill. Sept. 24, 2007) ("[O]nce a defendant establishes a qualified privilege, a plaintiff

5

must prove that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." (quoting <u>Kuwik v. Starmark Star Mktg. and Admin., Inc.</u>, 156 Ill. 2d 16, 24 (1993)).

In the instant case, Lyssenko raises the possibility that compensation at ITP might commonly be discussed at closed executive sessions rather than at board meetings that include non-board member guests, and that Borys and Krambeck recklessly or intentionally made the statements in an open meeting to defame Lyssenko. In his brief, Lyssenko notes "the use of closed executive sessions at other times for sensitive personnel issues," and argues that "[d]efendants easily could have addressed Lyssenko's employment and compensation in a closed meeting that would not have been recorded in meeting minutes, but they instead chose to make intentionally false and defamatory statements about Lyssenko during multiple meetings in the presence of third-party guests, and in written minutes." Moreover, Lyssenko alleges that Borys and Krambeck did not sufficiently investigate the statements and presented no evidence regarding their accuracy. This, combined with the decision not to use a closed executive session, indicates that Borys and Krambeck may have had a "direct intention to injure" Lyssenko or a "reckless disregard of [Lyssenko's] rights and of the consequences that may result to him." <u>Kuwik</u>, 156 Ill. 2d at 30.

The elements of qualified privilege are evident. However, Lyssenko's allegations suggest plausibly that defendants' conduct was unjustified or malicious and provide them with sufficient notice. Defendants' motion to dismiss Count V is denied.

**Motion to Strike Affirmative Defense**

Motions to strike affirmative defenses are generally disfavored in this circuit because they are often employed for the sole purpose of causing delay. See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). Such motions will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (internal citations omitted). Yet, it is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case. See Household Fin. Serv., Inc. v. Northeastern Mortgage Inv. Corp., 2000 WL 816795, at *1 (N.D. Ill. June 22, 2000) (citing Heller, 883 F.2d at 1295).

Under Fed. R. Civ. P. 15(a), leave to amend the pleadings "shall be freely given when justice so requires." Leave to amend may be denied, however, when a court finds undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, or the like. See Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1298 (7th Cir. 1993).

ITP asserts for the first time that Lyssenko was not an ITP employee, and thus Lyssenko's contract with ITP and any related promise are illegal and unenforceable. Lyssenko argues that the affirmative defense should be stricken because it does not properly respond to Lyssenko's amended complaint, violates Fed. R. Civ. P. 15(a), and would substantially prejudice Lyssenko. Lyssenko further argues that ITP acted in bad faith and unduly delayed in seeking leave to amend its untimely answer.

In the instant case, discovery is closed and the affirmative defense, if allowed to proceed, would require additional discovery. ITP argues that because "[t]he defense concerns what Plaintiff believed...not what ITP or others believed," witnesses will not need to be re-deposed. Because ITP claims that it and its directors believed that Lyssenko was an employee, ITP argues that more evidence of that fact would be "unnecessary and cumulative." However, the defense is not based solely on the thoughts of either party. In response to ITP, Lyssenko argues:

> Lyssenko's beliefs do not control the validity of the defense. Rather, the definition of employee pursuant to [the statutes] controls...Thus, all evidence addressing ITP's "supervision and control as to the time, place and manner of performance" of Lyssenko's activities is relevant, not simply Lyssenko's beliefs. As a result, Lyssenko would have served interrogatories on ITP and questioned all ITP board members regarding [supervision and control of his job and factors] for determining if an employer-employee relationship exists...Also, Lyssenko would have questioned ITP and others regarding ITP's knowledge of the prohibition in [the statutes], steps taken to comply with said statutes, and purposeful inducement of Lyssenko into a potentially-illegal agreement.

The court agrees. Whether Lyssenko, a non-lawyer, regarded himself as an ITP employee—particularly in light of the unusual nature of his responsibilities—is of little relevance in the context of this case. Throughout the litigation, all parties have operated on the premise that Lyssenko was in fact an employee. A single remark at his deposition does not alter that fact or change the posture of the case to allow ITP to raise an entirely new theory of defense at this late stage of the proceedings.

Motions to amend that require re-opening discovery may properly be denied. <u>See</u>, <u>e.g.</u>, <u>Continental Bank</u>, 10 F.3d at 1298 (district court did not abuse discretion in denying the defendants' motion to amend their affirmative defenses and counterclaim where amendments, if allowed, would have put the plaintiff to additional discovery); <u>Murphy v. White Hen Pantry Co.</u>, 691 F.2d 350, 353 (7th Cir.1982) (district court did not abuse discretion in denying the plaintiffs'

motion to amend where motion was filed after discovery was closed and the amendments, if allowed, would have injected new issues into the suit, requiring additional discovery).

Because the court is not inclined to re-open discovery in this case, Lyssenko's motion to strike is granted.

## **CONCLUSION**

For the reasons discussed above, defendants' motion to dismiss Count V is denied and Lyssenko's motion to strike ITP's affirmative defense is granted.

**ENTER:** July 23, 2010

_____
**Robert W. Gettleman**
**United States District Judge**