IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TARAS LYSSENKO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 07 C 6678 |
| INTERNATIONAL TITANIUM POWDER, LLC and STANLEY BORYS, | ) ) ) ) | Judge Sharon Johnson Coleman |
| | ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Taras Lyssenko, moves for summary judgment on Count I[1] of defendants International Titanium Powder, LLC and Stanley Borys' (collectively "ITP") counterclaim for breach of fiduciary duty. Lyssenko claims that he is entitled to judgment as a matter of law because the undisputed facts establish that he neither breached his obligations to ITP nor damaged ITP in any way. The motion is granted in part and denied in part.

**Factual Background**

The following undisputed facts are taken from the statements of fact submitted by the parties pursuant to Local Rule 56.1. (Dkt. #221, 235, 241) International Titanium Powder LLC was formed in 1997 to produce of low-cost titanium powder and titanium alloyed powder through its patented Armstrong Process. Initially, ITP was a small research and development

---

[1] Counts II and III were previously dismissed.

company, but later began seeking government funding in order to further its production capabilities. ITP hired Taras Lyssenko ("Lyssenko") to assist with business development and government relations to obtain government funding. Stanley Borys ("Borys") is ITP's CEO. When Lyssenko began working with ITP, he was not prohibited from working with all other entities. ITP did not require Lyssenko to sign an employment agreement or any other document until its formal ethics policy in April 2005. ITP, through its former CEO and board member, Arthur Wong, asked Lyssenko to provide government relations services to a company that was not in the titanium industry.

ITP formed short-term strategic partnerships with titanium consolidators and fabricators including ADMA Products, Inc. ("ADMA"). ITP tasked Lyssenko with developing relationships with titanium consolidators and fabricators because business development is tied to obtaining government funds. ITP benefitted from showing potential investors that there was a market for its titanium powder. ADMA has been in the business of consolidating titanium powder and other advanced metals into metallurgy parts since 1985. ITP and ADMA formed a "strategic partnership" that was "mutually beneficial". Through that strategic partnership ITP provided ADMA with ITP titanium powder and ADMA consolidated it. ITP and ADMA worked jointly on various projects. On occasion, ITP and ADMA attended government meetings with various units of government responsible for defense funding, including Army Research Labs and others not specified by the parties. ITP and ADMA shared a booth at the Defense Manufacturing Conference in 2004 and 2005, and gave a joint presentation at the conference. ITP informed the government that ADMA would benefit if ITP received government funds. ADMA provided letters of intent to ITP for the purchase of titanium powder, which ITP wanted to show the

government and investors to obtain funding.

Lyssenko claims he was authorized to assist ADMA with obtaining government funding. ITP asserts that although it authorized Lyssenko to assist ADMA with obtaining government funding, that authorization extended only to the benefit of ITP. ADMA received government funding and paid Lyssenko for his services.

Lyssenko assisted ITP with obtaining Title III funding from the government, beginning in 2001 until 2007. ITP wanted Title III funding to construct a manufacturing plant that would produce titanium powder for commercial use. In the fall of 2007, Congress appropriated $5 million in Title III funds, ITP received $4,512, 500 out of its government contract.

On July 30, 2007, the ITP board voted to eliminate the position that Lyssenko occupied with ITP. Thereafter, Lyssenko filed suit claiming *inter alia* breach of contract and wrongful discharge. ITP filed a counterclaim alleging breach of fiduciary duty by providing services, during his employment with ITP, to direct competitors of ITP and to entities who competed for federal funding with ITP. The counterclaim also alleged that Lyssenko engaged in conduct , without ITP's knowledge or consent, that was counter to ITP's best interests, including diverting an ITP 2007 federal funding request from an Army line item to a Title III request, which greatly increased the risk of losing the funding. Lyssenko moves for summary judgment on the counterclaim.

## **Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment the Court construes all reasonable inferences in the light most favorable to the non-moving party. Abdullahi v. City of Madison, 423 F. 3d 763, 773 (7th Cir. 2005) . The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." Lewis v. CITGO Petroleum Corp., 561 F. 3d 698, 702 (7th Cir. 2009). On a motion for summary judgment, a court cannot make credibility determinations or weigh the evidence because those issues are for the fact finder. Betaco Inc. v. Cessna Aircraft Co., 32 F. 3d 1126, 1138 (7th Cir. 1994). With these principles in mind this Court turns to the matter at bar.

## Discussion

Lyssenko argues that he is entitled to summary judgment because the undisputed facts establish that Lyssenko neither breached his obligations to ITP nor damaged ITP. To prevail on a claim of breach of fiduciary duty, a plaintiff must establish: "(1) a fiduciary duty on the part of the defendant, (2) the defendant's breach of that duty, and (3) damages that were proximately caused by the defendant's breach." DOD Techs. v. Mesirow Ins. Servs., Inc., 381 Ill. App. 3d 1042, 1046 (Ill. App. Ct. 2008)(citing Neade v. Portes, 193 Ill. 2d 433, 444 (2000)). It is undisputed in this case that Lyssenko owed ITP a duty as an employee. This Court will therefore focus its discussion on whether Lyssenko breached that duty proximately causing damages to ITP.

Lyssenko argues that his efforts to obtain Title III funding in 2007 were not a breach of

his duty to ITP because ITP asked him to seek that government funding. ITP responds that a jury could reasonably find that Lyssenko breached his duty by failing to follow ITP's instruction to request U.S. Army Research Lab funding for FY 2007/2008. ITP's counterclaim alleges that Lyssenko breached his duty by "diverting an ITP 2007 federal funding request from an Army line item to a Title III request." (Counterclaim, Dkt. #9, ¶18). The undisputed evidence establishes that ITP sought Title III funding in 2007, that Stanley Borys, ITP's CEO, was aware of and authorized Lyssenko to seek Title III funding. ITP has provided no evidence to the Court that creates a genuine issue of material fact on this point. Borys' testimony was clear, ITP sought Title III funding and ITP did not object to Lyssenko seeking the funding through Title III. (Dkt. # 235, Ex. 2, Borys dep. at 59). Borys also testified that he signed letters as CEO of ITP to Senator Durbin in support of Title III funding. Although he could not recall which years he signed those letters, Borys testified that "we started requesting Title III funding probably '04 or so looking at future years, sometimes for multiple years, so my guess is there's probably several letters that go back that request Title III funding for '06, '07, '08, '09, 2010. (Dkt. # 235, Ex. 2, Borys dep. at 117). That testimony, even when construed in the light most favorable to ITP, clearly establishes that ITP sought Title III funding. The fact that ITP received $5 million in Title III funding rather than the $100 million it wanted does not create a genuine issue of material fact when the record indicates that ITP approved the request for Title III funding. (Dkt. # 221, ¶22). Accordingly, Lyssenko, who was hired to obtain government funding for ITP, could not have breached his duty by applying for Title III funding on ITP's behalf with ITP's knowledge and authorization. Where an agent is acting within the scope of his authority there is no breach of his fiduciary duty. See Metz v. Independent Trust Corp., 994 F.2d 395, 403 (7th

Cir. 1993); Kohler v. Hindman, Inc., 80 F. 3d 1181, 1188 (7th Cir. 1996).

ITP provides no support from the record for its contention that Lyssenko somehow diverted funds to a request for Title III funding. Indeed, the deposition of Stanley Borys that ITP refers to as demonstrative of a dispute on this point actually demonstrates that there is no material dispute. Borys testified that there was a separate request for FY '08 Title III funding, which he approved. (Dkt. #235, Ex. 2, Borys dep. at 163). ITP does not provide any documents to show the diversion of the funding from Army Research Labs to Title III and Borys testified that he knows of no such documents. Id. Therefore, this Court grants Lyssenko's motion for summary judgment on this issue.

Turning to Lyssenko's two other arguments for summary judgment, this Court reiterates that Lyssenko does not dispute that he owed a duty to ITP as an employee and agent. Lyssenko contends that there is no genuine issue of material fact that ITP authorized Lyssenko's work with ADMA from 2004 until April 2005, and that ITP and ADMA were strategic partners rather than competitors. Lyssenko further asserts that, even if there is an issue of material fact regarding whether he breached his duty, ITP cannot establish that it was damaged by Lyssenko's work with ADMA. This Court disagrees that no triable issue of material fact exists regarding whether Lyssenko breached his duty and whether that breach damaged ITP.

Under Illinois law, "an employee owes a duty of fidelity and loyalty to his employer." Exhibit Works, Inc. V. Inspired Exhibits, Inc., 2005 U.S. Dist. LEXIS 34909, *6 (N.D. Ill. Dec. 21, 2005) (quoting V.I.M. Recyclers, L.P. v. Magner, 2004 U.S. Dist. LEXIS 28227, No. 03 C 343, *12 (N.D. Ill. July 21, 2004). An employee need not be an officer or a director to be accountable for a breach of fiduciary duties since an agent must act solely for the principal in all

matters related to the agency and refrain from competing with the principal. Id (citing E.J. McKernan Co. v. Gregory, 252 Ill. App. 3d 514, 530 (Ill. App. Ct. 1993)). "A fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith--in fact to treat the principal as well as the agent would treat himself." Burdett v. Miller, 957 F.2d 1375, 1381 (7th Cir. 1992). Section 387 of the Restatement (Second) of Agency requires that unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency. Lippert Mktg. v. Kingwood Ceramics, 1996 U.S. Dist. LEXIS 16311 (N.D. Ill. Oct. 16, 1996).

Here, the primary point of dispute is the scope of Lyssenko's authority to work with ADMA. As previously noted, an employee or agent does not breach his fiduciary duty if he is acting within the scope of his authority. See Metz v. Independent Trust Corp., 994 F.2d 395, 403 (7th Cir. 1993); Kohler v. Hindman, Inc., 80 F. 3d 1181, 1188 (7th Cir. 1996). As Lyssenko asserts, ITP does not dispute that it authorized Lyssenko to work with ADMA. Lyssenko seems to claim that ITP's authorization was unlimited and therefore he is entitled to summary judgment regardless of what he allegedly did with ADMA because it was within his authority. ITP on the other hand, asserts that Lyssenko was authorized to work with ADMA as a representative of ITP and assist them with development that would benefit ITP. Therein lies the dispute.

ITP has put forth ample evidence in the form of testimony from its CEO and directors to show that there is a genuine issue of material fact as to the scope of Lyssenko's authority and whether he adequately informed ITP of his work with ADMA. Of particular note, is the fact that Lyssenko had business cards that identified him as ADMA's person responsible for government relations and was ADMA's registered lobbyist.(Dkt.# 235, Ex. 4, 7, 8) Furthermore, while it is

undisputed that Lyssenko was paid by ADMA for his efforts to obtain government funding on ADMA's behalf, ITP asserts that it was unaware that he was receiving compensation from ADMA. (Dkt# 235, ¶70) ITP also it had no knowledge that Lyssenko was working on ADMA's behalf. (Dkt# 235, ¶56-57, 59) Lyssenko contends that Richard Anderson, then an ITP director, was present for an informal conversation at a conference between Lyssenko and ADMA director Dr. Moxsen. (Dkt.# 221, ¶63) Anderson testified however, that the conversation related to Lyssenko's work with ADMA as a representative of ITP, not as an employee of ADMA.(Dkt.# 235, ¶63)

Additionally, there are material factual disputes as to whether ADMA and ITP were competitors and whether ITP intended to or was able to consolidate titanium powder. ITP has supported its position with deposition testimony from Stanley Borys, CEO of ITP, and Dr. Vladimir Moxsen, CEO of ADMA, that although ADMA and ITP were strategic partners in some respects, they were also competitors. (Dkt.# 235, ¶75-78) Accordingly, ITP has submitted evidence that creates a genuine issue of material fact on which a jury could find that Lyssenko had breached his duty to ITP by not acting solely for the benefit of ITP. See Lippert Mktg., 1996 U.S. Dist. LEXIS 16311 (N.D. Ill. Oct. 16, 1996).

Lyssenko objects to some of the evidence that ITP put forth as demonstrative of a factual dispute as self-serving because the averments come from ITP directors. This argument is without merit. While the Court may strike self-serving affidavits not supported by the record in the context of a motion for summary judgment, Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001), here the record reflects that affidavits and testimony are based on personal knowledge. Thus, these affidavits are properly before the Court. Makor Issues & Rights, Ltd. v.

Tellabs, Inc., 2010 U.S. Dist. LEXIS 82444, * 27-28 (N.D. Ill. Aug. 13, 2010). The Seventh Circuit has repeatedly held that "a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion." Payne v. Pauley, 337 F.3d 767, 771 (7th Cir. 2003) (collecting cases).

There is also a genuine issue of material fact as to whether and to what extent ITP was damaged by Lyssenko's work with ADMA. ITP admitted that it was not damaged by its relationship with ADMA. (Dkt.# 235, ¶55) However, ITP disputes that it was not damaged by Lyssenko's work with ADMA. With respect to the Mantech/MTO funding, ITP asserts that it did not know prior to ADMA obtaining the funding that it would be used to purchase an additional rolling mill. (Dkt.# 235, ¶60) Moreover, it is disputed whether ITP was eligible for some of the government funding that Lyssenko sought on behalf of ADMA and whether ITP would have wanted it. (Dkt.# 235, ¶¶ 75-77) ITP also disputes that ADMA would have received the Mantech/MTO funding through Army Research Labs even without Lyssenko's assistance. (Dkt.# 235, ¶¶ 75-77) Dr. Moxsen, director of ADMA, stated that he <u>believed</u> ADMA would have received the Mantech/MTO funding without Lyssenko's assistance. (Plaintiff's Ex. 12, Moxsen dep. at 51). At minimum, however, ITP would have been damaged by the compensation it paid to Lyssenko during the period that he was breaching his duty to ITP. Under Illinois law, an employer may recover an employee's total compensation paid during the time period that the employee was breaching fiduciary duties owed to the employer. See Veco Corp. v. Babcock, 243 Ill. App. 3d 153, 611 N.E. 2d 1054, 1059, 183 Ill. Dec. 406 (Ill. App. Ct. 1993)(explaining that an employee who breaches fiduciary duties has no entitlement to compensation during a willful or deliberate course of conduct adverse to the principal's interests). Accordingly, there

are triable issues of material fact on which a jury could find that Lyssenko breach his duty to ITP and ITP was damaged by that breach.

## **Conclusion**

Based on the foregoing, Lyssenko's Motion for Summary Judgment [219] is granted in part and denied in part.

IT IS SO ORDERED.

Date: December 17, 2010

Entered:

Sharon Johnson Coleman