**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TARAS LYSSENKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07 C 6678 |
| | ) | |
| INTERNATIONAL TITANIUM POWDER, LLC; and STANLEY BORYS, | ) ) | Chicago, Illinois |
| | ) | February 16, 2010 |
| Defendants. | ) | 10:22 A.M. |

TRANSCRIPT OF PROCEEDINGS - Rule to Show Cause
BEFORE THE HONORABLE MARTIN C. ASHMAN, Magistrate Judge

APPEARANCES:

For the Plaintiff:      FREEBORN & PETERS
                              311 South Wacker Drive
                              Suite 3000
                              Chicago, Illinois 60606
                              BY: MS. GIA FONTE COLUNGA

For the Defendants:     GRADY PILGRIM CHRISTAKIS BELL LLP
                              53 West Jackson Boulevard
                              Suite 715
                              Chicago, Illinois 60604
                              BY: MR. JOHN FRANCIS GRADY

PAMELA S. WARREN, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 1928
Chicago, Illinois 60604
(312) 294-8907

**NOTE:** Please notify of correct speaker identification.

1	(Proceedings held in open court:)
2	THE CLERK:  07 C 6678, Lyssenko versus International
3	Titanium, status -- I mean rule to show cause.
4	MS. COLUNGA:  Good morning, your Honor.  Gia Colunga
5	on behalf of plaintiff/counterdefendant Taras Lyssenko.
6	MR. GRADY:  Good morning, your Honor.  John Grady for
7	defendants.
8	Judge, we're here this morning on the rule to show
9	cause that the Court entered on the 8th.  There were two items
10	that the Court mentioned in the order.  The first was
11	defendants's failure to appear in court on that day.
12	Judge, the reason the defendants were not in court on
13	that day is entirely my fault.  I missed the hearing, and I
14	missed it because I confused it with a date that was
15	next -- the next day before Judge Gettleman.
16	The hearing that the Court --
17	THE COURT:  I practiced law for 34 years, and I never
18	missed a date, did you know?
19	I'm just kidding.
20	(Laughter.)
21	MR. GRADY:  Your Honor --
22	THE COURT:  I understand.
23	MR. GRADY:  At the time I was at my desk and would
24	have immediately come over had I been aware of it.  So I
25	apologize to the Court.

1    THE COURT: Okay.
2    MR. GRADY: The second matter was our compliance, the
3 defendants's compliance with the Court's January 26th order to
4 turn over certain documents related to punitive damages
5 discovery.
6    Importantly, from my perspective, Judge, there was no
7 date by which the Court ordered those documents to be turned
8 over. And I believe the reason the Court did not do that was
9 that the documents are not -- it is not as if a specific
10 document were requested. It was documents, of course, that are
11 related to the net worth, the assets and liabilities of the
12 defendants.
13    We have a corporate defendant and an individual
14 defendant. I have -- I was working as and -- was working on
15 the 8th and actually just handed to counsel this morning a
16 balance sheet showing as of the close of '09 the assets and
17 liabilities of the corporate defendant. It is a draft. It is
18 going to be audited some time in April. But the
19 defendants -- or, sorry -- the plaintiff will have at that
20 point, when it is finalized, really everything that a jury
21 would be entitled to see with respect to punitive damages
22 calculation. So the delay was not for any purpose other than
23 to assemble this document.
24    And I would also add, Judge, that my client, my
25 corporate client, is in Baltimore. I have seen pictures of the

1   snow in Baltimore that remind me of the snow of '79 here.
2           THE COURT: Well, you're not old enough for the snow
3   of '67, are you?
4           MR. GRADY: I'm not, but I have heard stories, very
5   similar.
6           No one was in D.C. or Baltimore last week. So that --
7   the reason I tendered the things to plaintiff's counsel this
8   morning instead of last week was I couldn't get my client to go
9   to the office. So that's with respect to the corporate
10  defendant.
11          With respect to the individual defendant, I have
12  turned over basically everything there is that shows his net
13  worth. The only thing that I am missing is evidence of a
14  checking account and possibly documents that would show the
15  value of the home, which he owns without a mortgage.
16          MS. COLUNGA: Your Honor, while the Court didn't set
17  an explicit deadline, in my mind, at least when the Court
18  orders me to do something, I do it immediately.
19          We're now three weeks later. Defendants have given us
20  some documents; they have not given us all documents yet.
21  Specifically we don't have the tax records which were a
22  specific document requested in the document request relating to
23  the corporate representative or the corporate entity.
24          And also for the individual, we don't have documents
25  relating to the real estate or documents relating to the

1  vehicles.

2  I shouldn't have to rely on a letter listing out what
3  vehicles are there. I should be able to see the purchase price
4  of those vehicles and use them in our case.

5  So they haven't produced everything yet. And, you
6  know, the fact that one part of the corporation is in Baltimore
7  is largely irrelevant. They do have an office here in
8  Illinois. They work with that office regularly I know.

9  Beyond that though --

10  THE COURT: That doesn't mean --

11  MS. COLUNGA: -- while I was trying to --

12  THE COURT: That doesn't mean they have those records
13  here in Illinois.

14  MS. COLUNGA: Well, I know they have been able to get
15  documents through that office in the past.

16  But beyond that, counsel never let me know that there
17  was a delay. And I did email him prior to the last hearing,
18  never heard back from him, and, you know, then came to the
19  hearing and did sit here while waiting for counsel. My client
20  all the while was incurring fees. He is an individual, so each
21  time I come to court does -- is a big deal to him, and it
22  prejudices him. And each time I have to come in here to court
23  and talk about discovery delays and defendants's dilatory
24  conduct, it is severely prejudicing my client.

25  MR. GRADY: Judge, I wish -- that prejudice could have

 1  been alleviated by a phone call to me at my desk.  It is not
 2  required under the rules, but I have done that in the past when
 3  my opponents have made a mistake.
 4          The -- we would be happy to turn over everything we
 5  have with respect to automobiles.  But what does the purchase
 6  price of a 2008 car mean now?  You need to know the miles, you
 7  need to know the condition.  That's the value.
 8          THE COURT:  I agree.  I agree.  What it was bought for
 9  has no relationship to its value today or value at the time of
10  trial.
11          MS. COLUNGA:  I beg to differ, your Honor.  I do think
12  that a purchase price is still relevant.  This is discovery.
13  This isn't what we're going to use at trial at this point
14  and --
15          THE COURT:  I understand.  But discovery, you have got
16  to discover something that will lead to admissible evidence or
17  might lead to admissible evidence.  If you bought a car for
18  $20,000 two years from now what's it worth today?  Suppose it
19  is a wreck.  Suppose it is in wonderful condition.
20          Look at the Blue Book.  There is no record.  People
21  don't keep a record, a monthly record of the depreciation on
22  the car; that is, the actual cash depreciation on a car.
23          On the other hand, income tax returns show balance
24  sheets or show information which would lead to balance sheets
25  in terms of individuals.

1         MR. GRADY:  We have produced the individual income tax
2    return for '08.
3         THE COURT:  Okay.
4         MR. GRADY:  There is no '09 yet.
5         The corporate tax return is on its way.  It is
6    unfortunately a product of the delay that I have been
7    experiencing with my client.
8         THE COURT:  Okay.  All the tax returns.
9         What other information other than purchase information
10   of these vehicles, what other information is still out?
11        MS. COLUNGA:  Well, I mean, to be honest with you,
12   your Honor, I just got the handed these documents --
13        THE COURT:  Because --
14        MS. COLUNGA:  -- five minutes before the hearing.
15        THE COURT:  All right.
16        MS. COLUNGA:  So I haven't thoroughly analyzed.  But
17   the one other one that's spotted, came out to me as I looked at
18   it, was the information on the real estate of the individual,
19   and as well as the real estate of the corporation.
20        MR. GRADY:  Well, that's listed on the balance sheet,
21   Judge.
22        MS. COLUNGA:  Okay.  Well, like I said, I just got it
23   five minutes before here.
24        MR. GRADY:  Yeah.
25        MS. COLUNGA:  So I couldn't tell if the real estate

```
 1  was listed.
 2          THE COURT:  Now when the information -- when that
 3  balance sheet is -- the balance sheet is going to be audited
 4  and certified?
 5          MR. GRADY:  Yes.
 6          THE COURT:  All right.  You will supplement when it is
 7  certified.
 8          MR. GRADY:  Absolutely.
 9          THE COURT:  Okay.  Income tax returns, okay.
10          So income tax returns and information regarding the
11  purchase of real estate, including sales price and mortgage
12  balances, they will be delivered when?  How long will it take
13  you?
14          MR. GRADY:  Judge, if I could have till Monday.
15          THE COURT:  You have got it.  February 22.
16          And come back here on February 23 at 10:00 o'clock for
17  status.  We'll continue this motion --
18          MS. COLUNGA:  Thank you, your Honor.
19          MR. GRADY:  Thanks, Judge.
20          THE COURT:  -- until then.
21          MR. GRADY:  10:00 o'clock, right, Judge?
22          THE COURT:  Yes, 10:00 o'clock.
23          MR. GRADY:  Thank you.
24          THE COURT:  Okay.
25     (Which concluded the proceedings in the above-entitled
       matter.)
```

1                          CERTIFICATE

2          I HEREBY CERTIFY that the foregoing is a true, correct

3    and complete transcript of the proceedings had at the hearing

4    of the aforementioned cause on the day and date hereof.

5

6    /s/Pamela S. Warren                    March 22, 2010
     Official Court Reporter                    Date
7    United States District Court
     Northern District of Illinois
8    Eastern Division